## STATE *vs.* CHARLES H. MILLER.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Section 3097 of the General Statutes provides, among other things, that every person who shall "keep open" any place on Sunday, in which "any sports or games of chance are at any time carried on or allowed," shall be fined or imprisoned. The defendant, who was charged with keeping open on Sunday a place in which "certain sports known as billiards and pool" had been and were carried on and allowed, filed a general demurrer to the complaint. On reservation it was *held* that the object of the statute was to compel the closing on Sunday of those places which were appropriated to the carrying on of sports or games of chance as a business; that the sport known as billiards was an ordinary subject of such a business, and that the complaint sufficiently charged an offense within the statute.

The legislation concerning Sunday reviewed.

[Submitted on briefs October 27th—decided December 1st, 1896.]

PROSECUTION for keeping open on Sunday a place in which sports known as billiards and pool were carried on, brought originally to the town court of Orange and thence by the

defendant's appeal to the Criminal Court of Common Pleas for New Haven County, where the defendant demurred to the information and the court, *Hotchkiss, J.*, reserved the questions of law arising thereon for the consideration and advice of this court. *Judgment overruling demurrer advised.*

The statute (General Statutes, § 3097) in pursuance of which this prosecution was brought, is as follows : " Every person who by himself, his servant, or his agent, between the hours of twelve o'clock on Saturday night and twelve o'clock on Sunday night next following, shall sell or expose for sale any spirituous or intoxicating liquors, or shall keep open any place of any kind or description in which spirituous and intoxicating liquors are at any time sold or exposed for sale, or are reputed to be sold or exposed for sale, or in which any sports or games of chance are at any time carried on or allowed, or are reputed to be so carried on or allowed, shall be fined not less than fifty nor more than one hundred dollars, or be imprisoned not more than six months, or both ; but this section shall not apply to sales under a druggist's license."

The complaint charged that " on the 31st day of May, A. D. 1896, at said town of Orange, Charles H. Miller, of said town of Orange, with force and arms did by himself, his servant and agent, between the hours of twelve o'clock on Saturday night and twelve o'clock on Sunday night next following, keep open a certain place, building, apartment and room, known as Miller's Pavilion, in which certain sports known as billiards and pool for a long time previous thereto and then were carried on and allowed, against the peace of the State, of evil example, and contrary to the statute in such case made and provided."

The defendant demurred upon the ground ", that the complaint and the matters therein alleged are insufficient in the law."

*E. P. Arvine*, for the defendant.

Billiards is not a game of chance, nor in fact does the State claim it to be such. *State* v. *Gufton*, 8 Ired. (N. Car.) 271. The sole contention of the State is that to keep open a place

on Sunday where *sports* are at any time carried on and allowed, has been made a criminal offense by § 3097 of the Gen. Stats. If this is the true construction, the Act is certainly very wide and sweeping in its effect. Almost everything that is practiced as a recreation may be called a "sport," and is called such in the ordinary use of the word. The statute must be strictly construed in favor of the accused; the word "sports" must mean either sports of all kinds, or of a particular class. If of a particular class, we must seek for that class in the language of the statute. *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 434. The word "chance" furnishes the only suggestion that we have in that direction.

*George M. Gunn*, Prosecuting Attorney, for the State.

Sunday statutes are remedial and to be liberally construed in respect to the mischief to be remedied. *Smith* v. *Wilcox*, 24 N. Y. 355, 82 Amer. Dec. 302; *Northrup* v. *Foot*, 14 Wend. 248. Gaming and billiards and pool are the ordinary concomitants of a saloon for the sale of intoxicating liquors, and the purpose of § 3097 was to close such places, that they might not serve as a cover or excuse for the violation of other statutes relating more specifically to sale of intoxicating liquors. Under no conditions was the keeping of a gaming house or a house reputed to be such, legal (Gen. Stats. § 2559); and under no circumstances were any kind of sports on Sunday permitted, whether the element of chance entered in greater or less measure into their composition. See Gen. Stats. §§ 1569, 1570. Whatever force marginal notes may have in determining the effect of statutes, they nowhere have effect of changing their clear and apparent meaning.

HAMERSLEY, J. The partaking in sports or games of chance is not made an offense by § 3097 of the General Statutes, nor is it an offense by virtue of any law now in force. Formerly all games of chance were illegal; and sports or games involving a combination of skill and luck to any degree

seem to have been included under the ban.   In 1650 the
" game of shuffle (shovel) board " was specially prohibited,
and " any unlawful game " was forbidden.   In 1656 games
" altogether unlawful, in the very nature of them," were
defined as " cards, dice, tables, or any other game wherein
that great and solemn ordinance of a Lott is expressly and
directly abused and profaned ; " (1 Col. Rec. 527, 289) ; *i. e.,*
inasmuch as the Word of God authorized in certain cases
the ascertainment of the Divine will and the settlement of
controversies by the " Lott," the profanation of this ordi-
nance to the purposes of frivolous amusement is forbidden
by the Word of God, and is therefore unlawful.   The use of
the lot for purposes of gain was also unlawful, unless the
object were one approved by the General Court ; as when, in
1753, permission was given to the trustees of the College of
New Jersey to raise money by way of lottery for building "a
public house for entertaining the students" (permission there-
for having been repeatedly refused by the General Assembly
of that Province), the General Court found the object to be
" for the encouragement of religion and learning," and there-
fore lawful and not an abuse of the ordinance.   10 Col. Rec.
217.   In 1750 "An Act against Gaming " (*i. e.,* playing at
games, the special prohibitions of gambling in its various forms
came later) forbids dice, cards, tables, bowls, shuffle-board,
billiards, coytes (quoits), keils (kayle), loggets (loggats),
"or any other unlawful games or sport."   Acts, Ed. 1754,
p. 81.   Common sense, however, eventually asserted its su-
premacy in such matters, and legislation has ceased to stig-
matize innocent amusements as criminal, and legislative dis-
cretion is no longer invoked to define those pious uses that
may be potent to extract its inherent vice from gambling.

Section 3097 does not make partaking in "sports or games
of chance " on Sunday an offense.   Section 1569 retains a por-
tion of the early Sunday legislation, and forbids anyone to
" engage in any sport or recreation on Sunday."   This early
legislation was based not only on the duty of the State to
protect its citizens from wanton insults to their religious
faith and observances, and in the enjoyment of the peace

and quiet to which they may be entitled on a legal holiday, but also upon the duty of the State to compel all citizens to conform to the religious tenets established by the State as binding on the conscience of all. The Sunday law was at first administered by the General Court, without special legislation, in conformity with the word of God, which was accepted as supplying, in analogy to the English common law, defects in express legislation; and the Code of 1650 only provided a special penalty for open contempt of God's Word or the ministers thereof, and neglect to attend the public ministry of the Word; directing the civil magistrates to deal with anyone who failed to observe the peace, ordinances and rules of Christ as established by law. Special provisions from time to time were enacted. The various special provisions appear in the Revision of 1750, in "An Act for the due Observation and Keeping the Sabbath, or Lord's Day; and for Preventing and Punishing Disorders and Prophaneness on the same." This Act also is in part based on the duty of the State to enforce personal piety as by law established. It requires every person on that day privately "to apply themselves to duties of religion and piety," punishes those who, neglecting the public worship according to law, worship God by themselves in private houses; punishes whoever travels on that day or leaves his place of abode except to attend the public worship allowed by law, or does any business, labor or work of any kind; and punishes the use of "any game, sport, play or recreation." The first break in this legislation was in 1770, when conscientious dissenters from the worship and ministry established by law, were allowed to worship by themselves without incurring the penalty for non-attendance at the State church. Since that time various changes have been made, and § 1569 contains the remnant of the original Act.

The prohibition on Sunday of any sport or recreation which interferes with the preservation of public peace and order, or the enjoyment of appropriate quiet and religious observance on that day, is clearly within the power of the legislature; if, however, the language used must be con-

strued as including an exercise of the power employed prior
to the adoption of the Constitution, to control private action
of individuals in a matter of personal conscience, serious
questions would arise. But whatever may be the scope of
this section, the engaging in any sport on Sunday is not an
offense under § 3097. That section is directed against the
proprietor of a business who receives the public as customers
in the place where he carries on a business of such a nature
that its open transaction on Sunday is peculiarly liable to
disturb the quiet and good order to which all citizens are by
law entitled on that day ; and to accomplish this object it
punishes the keeping open of such a place of business more
severely than the mere transaction of any secular business is
punished.

Section 3097, so far as the offense under discussion is con-
cerned, provides that " every person who . . . between the
hours of twelve o'clock on Saturday night and twelve o'clock
on Sunday night next following, . . . shall keep open any
place . . . in which any sports or games of chance are at any
time carried on or allowed, shall be fined not less than fifty
nor more than one hundred dollars, or be imprisoned not more
than six months, or both."

To " keep " a place, as here used, means an appropriation
of the place by the person in control for the conduct of his
business therein. *State* v. *Main*, 31 Conn. 572, 574. This
is quite evident from the language of the whole section. To
" keep open " such a place, means providing some way of
coming and going sufficient to enable any portion of the
public to gather there and take part in the usual business
of the place ; it does not mean opening the place solely for
a proper purpose unconnected with that business. *State* v.
*Gregory, Jr.*, 47 Conn. 276. The business intended is de-
scribed as that of carrying on or allowing any sports or games
of chance. The statute does not punish keeping open any
place, except one in which the business described is trans-
acted and which is kept open on Sunday ; and does not
punish the subject-matter of the business there transacted,
*i. e.*, sports and games of chance. It is apparent that the

scope of the words "sports and games of chance," is determined and made adequately definite by the provision that the sports and games of chance specified must be such as in fact are the subject of a business consisting in supplying the requisite facilities for the use of such amusements in a place kept for the transaction of that business, to which the public or some portion thereof are invited as customers. It is a matter of common knowledge that the sport of billiards is an ordinary subject of such business, and that a place kept for the transaction of that business, if kept open on Sunday, may be peculiarly liable to interfere with the lawful restrictions for securing the quiet required on that day; and, moreover, for a long period our legislation has expressly classed "billiards" under "sports," when the word has been used in a similar connection. It is immaterial what motive induced the legislature to use this language in § 3097. "Sport" is a very general term, covering field sports and other means of recreation necessarily not a subject of the business described in the statute; possibly "games of chance" were added to exclude any doubt as to their being covered by the more general term, or to emphasize the fact of their inclusion,— possibly because it has been an ancient legislative custom to describe amusements regulated by statute under similar circumstances, as sports or games. The language of the statute is in other respects intentionally broad, so as to provide against ingenious evasions. It is sufficient that the whole section expresses with adequate clearness the real meaning of the words used, and includes as one subject of the business specified, the sport of billiards.

The complaint in this case in charging the defendant with keeping open on Sunday a certain place known as Miller's Pavilion, in which certain sports known as billiards were carried on and allowed, charges an offense within the statute. Whether the keeping open on Sunday of a place of business for this purpose, or some other purpose that may be covered by the broad language of the statute, is of such peculiar danger to the quiet of the day as to justify its selection for this

exceptional and severe penalty, is a legislative and not a judicial question.

The Court of Common Pleas is advised to overrule the demurrer and to render appropriate final judgment.

In this opinion the other judges concurred.