STATE OF CONNECTICUT *v.* FREDERICK CIERI.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 3—decided June 26, 1941.

*William M. Harney,* for the appellant (defendant).

*John P. Hodgson,* assistant state's attorney, with whom, on the brief, were *Hugh M. Alcorn,* state's attorney, and *Hugh Meade Alcorn Jr.,* assistant state's attorney for the appellee (the state).

BROWN, J. In his appeal from a conviction of keeping, on September 5, 1940, a place resorted to for the purpose of gaming, in violation of § 6320 of the General Statutes, the defendant claims in effect that the facts found do not support this conclusion. The court's finding is not attacked by the appeal, and the following material facts in substance appear therein. On September 5, 1940, the defendant was the holder of

a permit issued by the liquor control commission in January, 1940, for the sale of alcoholic liquor on premises known as the Aviation Grill, in Hartford. During this period Alexander DeRosa, as a partner in the ownership of the restaurant, operated the grill with the defendant. On September 5th, and for three months preceding, a pinball machine was located in the grill. The insertion of a five cent piece in a slot of this machine releases five metal balls for play. The machine can then be utilized to obtain with each of these a score determined by pure chance, and in the event that certain scores are registered an indicator informs the player that he is entitled to play five more balls without paying therefor. On the day in question, when DeRosa was in charge of the premises and the defendant was absent, one of two Hartford police officers in civilian clothes, each of whom had entered the grill and ordered a glass of beer, was playing the machine, when the indicator showed him to be entitled to a free game. Calling this fact to the other officer's attention the first officer inquired if he would have a cigar. Upon his indicating that he would, DeRosa handed a five cent cigar to the second officer without hesitation, as an award for the free game won by the first officer. The officers then played the machine for thirty-five or forty minutes more without winning anything further, expending $2.15 in the process. The court concluded that as sole permittee the defendant was charged with the lawful management and control of the premises; that the machine as used at the time was a gambling machine; that the premises were kept and used by the defendant as a place which was resorted to for the purpose of gaming, and that he was guilty beyond a reasonable doubt thereof as charged.

It is only necessary to consider the defendant's contention that the finding does not warrant the court's

conclusion that he did keep a place resorted to for the purpose of gaming. To "keep a place," as used in this statute, means an appropriation of the place by the person in control for the conduct of his business therein. *State* v. *Main,* 31 Conn. 572, 574; *State* v. *Miller,* 68 Conn. 373, 378, 36 Atl. 795. It means to maintain, carry on, conduct, or manage the place in question. Black's Law Dictionary (3d Ed.) 1053. The finding leaves no doubt, therefore, that the defendant did keep the Aviation Grill from January, 1940, until and including September 5, 1940. No violation of the statute was involved, however, unless and until such time as the place was resorted to for gaming. While the finding is that the pinball machine had been located in the place for three months, it is not found that it was a gambling machine per se, and the state concedes that it was not. There is no finding that it was ever played by anyone at any time, with the sole exception of its use by the police officer on the day in question. Therefore, as the facts are found, the place was never resorted to for purposes of gaming until this occurrence of September 5th. The question determinative of the appeal, then, is whether this incident was sufficient to establish beyond a reasonable doubt that the defendant in keeping the place "did keep a place resorted to for the purpose of gaming" in violation of the statute.

The interpretation by courts in other jurisdictions accorded statutes which prohibit the frequenting or keeping of a gaming house, affords support for the defendant's contention that the facts here are insufficient to establish his guilt under § 6320. Thus, ordinarily, the use of a place to render it a gaming house must be frequent, customary, common or habitual; 27 C. J. 1012; *Anderson* v. *State* (Tex. App.), 12 S. W. 868; see *Engeman* v. *State,* 54 N. J. L. 257, 23 Atl. 679; *Haring* v. *State,* 51 N. J. L. 386, 17 Atl. 1079; and a

single act of gaming is insufficient to constitute it a gaming house. *Commonwealth* v. *Charlie Joe,* 193 Mass. 383, 79 N. E. 737; 27 C. J. 1012. That the word "keep" as used in statutes of this nature implies duration, is well brought out in the court's opinion in *United States* v. *Smith,* 27 Fed. Cases 1155, where the indictment was for keeping a common gaming table, and the evidence was that it was maintained for one day, by these words: "The word 'keeping,' certainly, when applied to time, implies duration. Standing alone without limitation, either by express words or by the nature of the act or thing which it governs, it implies indefinite duration; as when I say, take this book and keep it; keep at work; keep the mill going. But the duration may be limited to a single day, or hour, or minute, and still it is 'keeping.' So it may be limited or extended by the nature of the subject to which it is applied. That subject may consist of a succession of acts. Thus we say, 'he keeps a ferry'; but a single act of carrying a man across a river in a boat, is not keeping a ferry;—'keeps a tavern'; but a single act of lodging a traveller, is not keeping a tavern. So we say, 'he keeps a disorderly house'; but a single instance of disorder in the house, is not the keeping of a disorderly house. Many other instances may be cited, in which the word keeping implies a repetition, or succession of similar acts." It is our conclusion that the single incident of gaming in this case was insufficient to establish that duration of the practice essential to prove the defendant guilty of keeping a place resorted to for the purpose of gaming in violation of § 6320. The fact that a permit for the sale of alcoholic liquor in this place had been issued to the defendant afforded corroborative evidence that he was the keeper, but could not render him guilty of a crime

of which he would otherwise be innocent, as might be inferred from the court's first conclusion.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.