Joseph MOSS

v.

Albert H. HORNIG.

Civ. No. 9261.

United States District Court
D. Connecticut.

May 9, 1962.

George J. Malinsky, Georgetown, Conn., for plaintiff.

**326**

Albert L. Coles, Atty. Gen., Louis Weinstein, Asst. Atty. Gen., Hartford, Conn., for defendant.

BLUMENFELD, District Judge.

The plaintiff seeks injunctive relief from pending state criminal proceedings in which he is charged with violation of Conn.Gen.Stat. § 53–300 (Rev. of 1958), prohibiting Sunday retail sales. Alleging that the statute is unconstitutional, he applies for an injunction and requests a three-judge court be convened to hear his application, pursuant to 28 U.S.C. § 2281.

### The Three-Judge Court

28 U.S.C. § 2281, provides that an injunction

> "restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

■■ Mere allegations that a state statute is unconstitutional do not automatically require a district judge to initiate the procedure under 28 U.S.C. § 2284, to invoke a three-judge court. What was made plain by Judge Friendly in Bell v. Waterfront Comm. of N. Y. Harbor, 2 Cir., 1960, 279 F.2d 853, 857–858, has been confirmed by the Supreme Court in Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512, where it is stated, at 514, that "Section 2281 does not require a three-judge court when the claim that a statute is unconstitutional is wholly unsubstantial, legally speaking non-existent;" i. e. when "prior decisions make frivolous any claim that a state statute on its face is not un-

constitutional." That is the situation here.

In four cases decided less than a year ago, the Supreme Court laid to rest all claims against the constitutionality of Sunday closing laws. The conviction of employees of a discount department store under Maryland statutes for selling various articles on Sunday was upheld in McGowan v. Maryland, 366 U.S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961). The challenge to the Pennsylvania Sunday laws in Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961) was rejected, although the statute provided stiffer penalties for sale of certain commodities by retailers than for other business transactions. The court found that such a classification was justifiable because of: (1) the interference with peace and quiet caused by the large number of cars attracted to retail stores; (2) the pressure upon competitors to keep open on Sundays; and (3) the large number of employees involved.

### Free Exercise of Religion

In Bruenfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), a retailer of the Orthodox Jewish faith also challenged the Pennsylvania laws on the ground that the enforced Sunday closing of his store, combined with the voluntary closing on Saturday for religious reasons, would impose such a heavy economic handicap upon his business that he would be unable to continue it. In spite of express recognition that the law operated "so as to make the practice of * * * religious beliefs more expensive", the statute was held to be valid "to advance the State's secular goals * * * despite its indirect burden on religious observance * * *" 366 U.S. at 607, 81 S.Ct. at 1148.

■ Joseph Moss keeps his store open on Saturdays too. Even if he did refrain from doing business on Saturday because of the practice of his religious beliefs, Conn.Gen.Stat. § 53–303 exempting those who observe Saturday as a day

of rest from the penalty of the Sunday law, would relieve him of what Mr. Justice Stewart's dissenting opinion, 366 U.S. at 616, 81 S.Ct. at 1152, described as the compulsion "to choose between his religious faith and his economic survival." The plaintiff in this case does not come within two long jumps of having a claim with as much merit as Braunfeld's. Not only does Conn.Gen.Stat. § 53–300 not infringe upon the free exercise of religion, but the plaintiff has no standing to make the claim. 366 U.S. at 429, 81 S.Ct. at 1106.

### Discriminatory Classification

■ Although the exemptions to prohibited transactions which all states, including Pennsylvania, Maryland and Connecticut, have in their Sunday closing laws are less complex than those of Massachusetts, the Supreme Court concluded that even those of Massachusetts do not create such an arbitrary classification as to constitute a violation of the equal protection clause. Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961). A comparison of the exemptions in each state's law may be readily made by reference to the chart in Appendix II to Mr. Justice Frankfurter's opinion, 366 U.S. at 555, 81 S.Ct. at 1206. As one would expect, those in the law of the Commonwealth of Massachusetts, with a similar historical background, show a striking similarity to those in the law of its neighboring State of Connecticut. Although the Massachusetts statute has more exceptions, the only difference between those which are common to both is that Connecticut permits the sale of antiques on Sunday, whereas Massachusetts permits the sale of art catalogues and art works. Since the Connecticut Supreme Court of Errors in State v. Shuster, 145 Conn. 554, 145 A.2d 196 (1958) has already sustained this as a reasonable classification, in view of the cultural and artistic benefits to be derived from antique hunting, this is a difference without a distinction. Conn.Gen.Stat. § 53–300, does not violate the equal protection clause of the Fourteenth Amendment.

### Establishment of Religion

■■ The plaintiff's claim that the statute violates the First Amendment's prohibition against "an establishment of religion" is equally without merit. This claim rests upon the plaintiff's contention that the Supreme Court of Errors of Connecticut has stated that this statute is religious as well as secular in purpose. He points out the following sentence:

> "The purpose of the statute, as its title and history indicate, is to secure a fitting observance of Sunday both as a day for religious worship and as a day for rest and recreation." State v. Hurliman, 143 Conn. 502, 507, 123 A.2d 767, 769 (1956).

However, this should be read as referring to the *original* purpose of the law, for I have no doubt that only this was intended, because, in support of the quoted statement, the court cited the early decision of State v. Miller, 68 Conn. 373, 36 A. 795 (1896), the opinion of which makes that clear. The Miller case traced the legislative trend away from the original religious aspect of the statute to the secular purposes which had become dominant by 1896. The court in Hurliman did not even advert to the prior decision in Wetherell v. Hollister, 73 Conn. 622, 625, 48 A. 826 (1901), which had also stated:

> "We suppose that the primary purpose of Sunday legislation has been to secure to private citizens the quiet enjoyment of Sunday as a day of rest and to encourage the observance of moral duties, not to enforce an institute of religion. The legislation exempting persons who observe Saturday as a day of rest, from the penalty of the Sunday law, shows this. General Statute § 1572 [now Conn.Gen.Stat. § 53–303]"

In the latest case decided by the Supreme Court of Errors, State v. Shuster (supra), Judge Mellitz dispelled any argument that the statute's purpose is religious, 145 Conn. at pp. 557–558, 145 A.2d at p. 197:

> " * * * we must bear in mind that the primary purpose of the leg-

islation is not to enforce an institute of religion. Wetherell v. Hollister, 73 Conn. 622, 625, 48 A. 826. Although such statutes as this may be said to have had a religious origin, they are upheld as a valid exercise of the police power in recognition of the fact 'that the first day of the week by general consent is set apart 'for rest', in accord with the general experience of mankind that it is wise and necessary to set apart such a day at stated intervals for both the physical and moral welfare of the members of a State or community.' People v. Friedman, 302 N.Y. 75, 79, 96 N.E.2d 184, appeal dismissed, 341 U.S. 907, 71 S.Ct. 623, 95 L.Ed. 1345; Soon Hing v. Crowley, 113 U.S. 703, 710, 5 S.Ct. 730, 28 L.Ed. 1145; Hennington v. Georgia, 163 U.S. 299, 304, 318, 16 S.Ct. 1086, 41 L.Ed. 166; Petit v. Minnesota, 177 U.S. 164, 165, 20 S. Ct. 666, 44 L.Ed. 716. Such legislation is being increasingly regarded as day-of-rest legislation rather than as Sabbath or Sunday closing laws. State v. Crabinski, 33 Wash.2d 603, 606, 206 P.2d 1022."

Finally, it should be noted that Mr. Justice Frankfurter, concurring in McGowan v. Maryland (supra) fn. 82 at page 498 of 366 U.S., at page 1174 of 81 S.Ct., interprets the Shuster decision as holding that Connecticut's law has " * * * an exclusively secular function * * *."

This court is not bound to accept the characterization placed upon the statute by the state court in passing upon the question of constitutionality. Gallagher v. Crown Kosher Super Market (supra), 366 U.S. at 629, 81 S.Ct. at 1128; Society for Savings, etc. v. Bowers, 349 U.S. 143, 151, 75 S.Ct. 607, 99 L.Ed. 950 (1955).

While I do not read the Hurliman case as giving any support to the plaintiff's contention that this statute has a religious purpose, I am free, in any event, to rely solely upon the decisions of the United States Supreme Court. Since the opinions in the four recent Supreme Court cases in Volume 366 .establish beyond question that the constitutional issues presented by the plaintiff in this case are transparently fictitious, there is no warrant for submitting them to a three-judge court. Bailey v. Patterson (supra).

### The Claim of Unconstitutional Enforcement

■■ Although it is settled that a single judge has power to dismiss in limine for want of a substantial constitutional question as to state action challenged under 28 U.S.C. § 2281, Bell v. Waterfront Comm. of N. Y. Harbor (supra), the plaintiff makes the further contention that, even though the statute does not on its face raise any substantial constitutional question, nonetheless, a three-judge court is necessary to pass upon the question of the unconstitutionality of its enforcement. In this respect, the plaintiff appears to have misconstrued the purpose of 28 U.S.C. § 2281. Congress, in enacting this statute, recognized that it imposed a severe burden upon the federal courts. Ex parte Collins, 277 U.S. 565, 569, 48 S.Ct. 585, 72 L.Ed. 990 (1928). For this reason, the statute is to be narrowly construed. Bailey v. Patterson (supra); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

■■ The remaining allegations of the complaint allege only that a single prosecutor in the Third District of eighteen districts of the State of Connecticut Circuit Court[1] has been arbitrary and

1. Towns embraced within the Third District:
Danbury
New Milford
Ridgefield
Newtown
Kent
Sherman
Bridgewater
Brookfield
New Fairfield
Bethel
Redding
Sessions in this district are held only in the first four towns. And see fn. 5, infra.

discriminatory in prosecuting violators of this statute. Assuming that such allegations could be substantiated, this would not bring the plaintiff within the ambit of three-judge jurisdiction. "The statute comes into play only when an injunction is sought 'upon the grounds of the unconstitutionality' of a statute." Bailey v. Patterson (supra). This does not contemplate actions predicated upon claimed unconstitutionality in the result obtained from the use of the statute. Phillips v. United States (supra) 312 U.S. at 252–253, 61 S.Ct. at 483–484; Ex parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940). This distinction between an attack upon the ground of unconstitutionality of a statute and the unconstitutionality of enforcement has been sustained by several circuit and district courts. Penagaricano v. Allen Corp., 1 Cir., 1959, 267 F.2d 550, 555–556; Aaron v. Cooper, 8 Cir., 1958, 261 F.2d 97, 106; Sealy v. Dept. of Public Instruction, 3 Cir., 1958, 252 F.2d 898, 900, cert. den. 356 U.S. 975, 78 S. Ct. 1139, 2 L.Ed.2d 1149; Voege v. American Sumatra Tobacco Corp., D.C. Del., 1961, 192 F.Supp. 689, 691; Andrew C. Nelson, Inc. v. Jessup, D.C.S.D.Ind., 134 F.Supp. 218, 219–220 (1955). The distinction was succinctly stated in Nichols v. McGee, D.C.N.D.Cal.N.D., 169 F.Supp. 721, 724, app. dis. 361 U.S. 6, 80 S.Ct. 90, 4 L.Ed.2d 52 (1959): [2]

"Where the issue is one of actual discrimination, rather than the constitutionality of a State law, the issue is factual and may not properly be addressed to a three-judge court * * * for the explicit language of § 2281 of Title 28, U.S.C.A., limits

the jurisdiction of a three-judge court to consideration of statutes * * *."

There is still no warrant for invoking a three-judge court.

### The Claim of Violation of the Civil Rights Act

Stripped of the allegation that the statute itself is unconstitutional, the sole remaining question is whether the claim against the defendant predicated upon 42 U.S.C., § 1983,[3] should be dismissed.

Upon the commencement of this action, the plaintiff obtained an ex parte stay order pending a hearing before the court. On the date set for the hearing, the plaintiff requested a postponement on the ground that the defendant had filed a motion to dismiss. The defendant acceded to an extension of the stay to a subsequent date when the parties would appear with witnesses and evidence relating to both the plaintiff's application for a temporary injunction and the defendant's motion to dismiss.

▆ In view of the fact that the evidence was voluntarily introduced before the court with full opportunity to the plaintiff to state the precise nature of his claims and to offer proof in support thereof, the defendant's motion to dismiss must be treated as a motion for summary judgment pursuant to Rule 56 F. R.C.P. Rule 12(b) provides:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading

---

2. Dismissal of an appeal by the Supreme Court constitutes a ruling on the merits that no substantial federal question exists. Two Guys from Harrison-Allentown, Inc. v. McGinley, D.C.E.D.Pa., 1959, 179 F. Supp. 944, 949, fn. 4, aff'd. 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551.

3. 42 U.S.C. § 1983, Civil Action for Deprivation of Rights:
   "Every person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

North American Iron & Steel Co. v. United States, D.C.E.D.N.Y., 1955, 130 F. Supp. 723; Hibben v. Kuchaj, D.C.N.D. Ill., 1953, 117 F.Supp. 55.

▮▮▮▮ Before determining whether any genuine issue as to any material fact exists, the scope of the plaintiff's claim should be defined. The claim here is one of denial of equal protection. Since it involves only a single defendant and contains no claim of conspiracy, it is clearly not within 42 U.S.C. § 1985.[4]

A substantial split of authority exists with regard to the question whether § 1983 encompasses a claim of denial of equal protection. Several cases have held that it gives merely a right of action for deprivation of due process. This line of authorities distinguishes between those rights covered by § 1983 and the broader rights under § 1985. Ortega v. Ragen, 7 Cir., 1954, 216 F.2d 561, cert. den. 349 U.S. 950, 75 S.Ct. 786, 99 L.Ed. 1268; McShane v. Moldovan, 6 Cir., 1949, 172 F.2d 1016; Bottone v. Lindsley, 10 Cir., 1948, 170 F.2d 705, cert. den. 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101. This latter view received passing support by way of dictum in Morgan v. Sylvester, D.C.S.D.N.Y., 1954, 125 F.Supp. 380, 384, fn. 10, aff'd. without opinion, 2 Cir., 220 F.2d 758. The leading case espousing the opposing view is Agnew v. City of Compton, 9 Cir., 1956, 239 F.2d 226, 230, which followed the concurring opinion of Mr.

Justice Stone in Hague v. C. I. O., 307 U.S. 496, 526, 59 S.Ct. 954, 83 L.Ed. 1423 (1939):

"It will be observed that the cause of action, given by the section in its original as well as its final form, extends broadly to deprivation by state action of the rights, privileges and immunities secured to persons by the Constitution. It thus includes the Fourteenth Amendment and such privileges and immunities as are secured by due process and equal protection clauses, as well as by the privileges and immunities clause of that Amendment."

This approach was followed in Ghadiali v. Delaware State Medical Society, D.C. Del., 1939, 28 F.Supp. 841, 844–845; see also: Anderson v. Moses, D.C.S.D. N.Y.,1960, 185 F.Supp. 727, 734. Whether required to decide that § 1983 encompasses a claim for denial of equal protection of the laws, (which is my own view) or not, I proceed to consider it. Unless I do, the plaintiff's case ends right here.

▮▮▮ Assuming that a claim of denial of equal protection of the laws is cognizable under 42 U.S.C. § 1983, the plaintiff's claim appears in essence to rest upon the fact that he was prosecuted and others were not. Such a contention in and of itself has never been held sufficient to raise a constitutional question. United States ex rel. Plue v. Cummings, 2 Cir., 1955, 224 F.2d 276, 277; Agnew v. City of Compton (supra); Sanders v. Waters, 10 Cir., 1952, 199 F.2d 317, 318; Crell v. United States, 8 Cir., 1940, 112 F.2d 861, 875; Saunders v. Lowry, 5 Cir., 1932, 58 F.2d 158, 159; United States v. Palermo, D.C.E.D.Pa., 1957, 152 F.Supp.

---

4. 42 U.S.C. § 1985, Conspiracy to interfere with Civil Rights—Preventing Officer from Performing Duties:

"(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

825, 828; United States v. Manno, D.C. N.D.Ill., 1954, 118 F.Supp. 511, 515; Buxbom v. City of Riverside, D.C.S.D. Cal., 1939, 29 F.Supp. 3, 8; Application of Finn, 1960, 8 Cal.Rptr. 741, 356 P.2d 685.

In the present case, the evidence accompanied by plaintiff's own representation precludes an inference that any intentional discrimination of any type was exercised by the defendant.

In support of his contentions that the motion to dismiss should be denied and his application for an injunction be granted, the plaintiff introduced into evidence the testimony of the plaintiff Moss, the defendant Hornig, the Clerk of the Third Circuit Court Mrs. McNamara, and the former Chief Prosecutor of the Third Circuit Mr. Dowling. In capsule form, the evidence presented established that:

*Mrs. McNamara:* As custodian of the court records dating back as far as 1940, she could attest to only four prosecutions instituted pursuant to this Sunday law. Two of these were commenced against the plaintiff, including the one presently pending. The other two were against one Paul Pesente.[5]

*Mr. Dowling:* As Chief Prosecutor, he had instituted one of the actions against Pesente and the first action against the plaintiff. These prosecutions were instituted after Dowling had sent out nine or ten letters to various merchants advising them of possible Sunday law violations. No action against any merchants ex-

cept Pesente and Moss was taken, although he was of the belief that not all recipients of this letter had complied. However, his intent had never been to discriminate. Rather, his decision to prosecute was based upon his own determination that sufficient evidence existed in the complaints he filed to obtain a conviction. His decision to prosecute Pesente and Moss was made without consultation with the defendant Hornig, who was his assistant at the time. There was no concerted plan between Hornig and himself to discriminate against Moss. Dowling did not know the plaintiff.

*Mr. Hornig:* He had been Assistant Prosecutor for the Third Circuit from January 1, 1961 (the date when the Circuit Courts and the division of the state into eighteen districts came into being) to January 1, 1962, at which time he became Chief Prosecutor. As Chief Prosecutor, he had commenced one proceeding against Pesente and the present action against the plaintiff. There was no connection between Pesente and the plaintiff. Pesente operates a general hardware store. The plaintiff operates a retail shoe outlet. Hornig instituted both actions upon the basis of formal complaints. These were the only complaints of Sunday law violations he had received. The complainants in each instance were different persons. His office as Chief Prosecutor is for the sole purpose of prosecuting and

5. On January 1, 1961, Conn.Gen.Stat. § 51–248 et seq., substituted an entirely new circuit court system embracing the entire State of Connecticut in place of what had been for some 300 years a coterie of separate and independent Justice Courts presided over by locally elected Justices of the Peace whose jurisdiction extended to civil and criminal cases of a minor nature. See An Obituary Note On The Connecticut Justice Of The Peace, Judge Herbert S. MacDonald, XXXV Conn.Bar.Journal, 411 (1961). A few of the larger cities and towns also maintained courts established by special

enactment in each case, but the small Town of Brookfield, where the plaintiff operated his retail store, was one which had only a local Justice Court. The records of Mrs. McNamara prior to January 1, 1961 were those only of the City of Danbury, which would not include records of the Brookfield Justice Court because violations of law committed in Brookfield would not be within the jurisdiction of the City Court of Danbury. A charge of violation of § 53–300 would have been within the jurisdiction of the Justice Court of the Town of Brookfield.

includes no investigatory duties. He had no personal knowledge of any merchants who were selling in violation of the Sunday law. He has in the past and intends in the future to prosecute only when he determines that there is sufficient evidence to sustain a conviction. He never intended to be arbitrary or discriminatory in the enforcement of this law.

*Mr. Moss:* He operates a retail shoe outlet specializing in "cancellation" shoes. His store is located on a main highway in the small town of Brookfield, part of a larger area of country and summer residences adjacent to Danbury. The plaintiff operates his store on Sundays and one-third of a total of $276,000 a year in gross receipts is realized from Sunday sales. Many of his Sunday customers include persons who drive there from out of state as well as from other sections of Connecticut.

That Moss became a target for prosecution is easy to understand in view of the prominence of his activities in the face of heavy Sunday traffic bent on rest and recreation. He offered no evidence that he was acquainted with the defendant or that there was any personal animus between the defendant and himself. No evidence was offered which might tend to show that the defendant, either singularly or in concert with others, had applied this law to the plaintiff for the purpose of depriving him of any constitutional right. He specifically disclaimed to the court that the defendant was actuated by any malevolent motive against the plaintiff. He made it clear that his claim was that the enforcement of the statute was being urged by the Chamber of Commerce as a weapon of economic pressure. This assertion has been repeated in this manner in the plaintiff's brief:

"This phase of plaintiff's case must rest per force on proof, but we contend that malice, or malevolent intent to injure the plaintiff is not necessary. It is enough to show that other violators were not prosecuted and that the prosecution of the plaintiff was brought about by a local chamber of commerce in an endeavor to use the Sunday Blue Laws as an economic weapon to force him, but not other merchants, to stay closed on Sundays."

It is clear that plaintiff's reliance upon this claim is at the foundation of his complaint and that he does not assert any intent of the defendant himself to deprive the plaintiff of a right, nor does he claim any concert between the Chamber of Commerce and the defendant.

The defendant was merely performing the duties of his office in instituting the state proceedings against the plaintiff. To prevent any possible onus attaching to the defendant, as a result of these proceedings, the court finds that the defendant was performing these duties in good faith and with no improper motive behind his actions. In fact, there was no evidence to the contrary.

In People v. Friedman, 1951, 302 N.Y. 75, 96 N.E.2d 184, app. dis. 341 U.S. 907, 71 S.Ct. 623, 95 L.Ed. 1345,[6] a similar claim of discriminatory enforcement of the Sunday law was held to be an insufficient defense to a prosecution under that law when the claim was unaccompanied by proof of conscious discrimination. In order that such discrimination may rise to the stature of an unconstitutional act, it must be accompanied by proof of "purposeful and malicious discrimination." United States v. Cummings (supra) 224 F.2d at 277. The Supreme Court made this clear in Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943):

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of

6. Note fn. 2 (supra).

equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person. cf. McFarland v. American Sugar Co., 241 U.S. 79, 86–87 [36 S.Ct. 498, 60 L.Ed. 899], or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself, Yick Wo v. Hopkins, 118 U.S. 356, 373–4 [6 S.Ct. 1064, 30 L.Ed. 220]. But a discriminatory purpose is not presumed, Tarrance v. Florida, 188 U.S. 519, 520 [23 S.Ct. 402, 47 L.Ed. 572]; there must be a showing of 'clear and intentional discrimination,' Gundling v. Chicago, 177 U.S. 183, 186 [20 S.Ct. 633, 44 L.Ed. 725]; see Ah Sin v. Wittman, 198 U.S. 500, 507–8 [25 S.Ct. 756, 49 L.Ed. 1142]; Bailey v. Alabama, 219 U.S. 219, 231 [31 S.Ct. 145, 55 L.Ed. 191]."

The discrimination must be directed towards the actual deprivation of the constitutional right. Agnew v. City of Compton (supra) 239 F.2d at 231. Mere personal vindictiveness by the prosecutor, if unaccompanied by a purposefully discriminatory motive, does not suffice. Gibbons v. Reynolds, 8 Cir., 1948, 172 F.2d 95, 98–99, 100.

Looking at the complaint, the substantial quantity of evidence presented by the parties at the hearing, which the court considered, and the admissions of the plaintiff, both at the hearing and in his brief, all in a light most favorable to the plaintiff, it is clear that no genuine issue exists as to the non-existence of the essential element of purposeful discrimination which is necessary to sustain this action.

The plaintiff's motion for a temporary injunction is denied.

The defendant is entitled to summary judgment.

So ordered.