**Commonwealth v. Kessler**

*John W. Dean, 3rd*, for Commonwealth.

*Stephen I. Weiss*, for defendants.

GARB, J., April 13, 1970.—We are deciding herein two separate appeals from summary conviction wherein defendants were charged with operating their motor vehicles on the highways of the Commonwealth of Pennsylvania, Bensalem Township, Bucks County, in violation of the overweight provisions of The Vehicle Code of April 29, 1959, P. L. 58, sec. 903(a), as amended, 75 PS §903(a). Defendants were both stopped while operating separate dump trucks on State Road in Bensalem Township on September 14, 1967, at approximately 6:30 to 7 p.m. They were both directed by the arresting officer, a member of the Bensalem Township Police Department, then in uniform and wearing a badge, to proceed to the scales at the Badenhausen Corporation, a distance of seven-tenths of one mile from the point of apprehension. Upon weighing each truck, it was found that the truck operated by defendant, Kessler, weighed 73,180 pounds gross weight, or 26,180 pounds in excess of the weight permissible under the foregoing act of assembly, and that the Emberger truck weighed 63,700 pounds gross weight, or 16,700 pounds in excess of the allowable weight. Each truck was a three-axle dump truck. Each of defendants was afforded the opportunity of observing the recorded weight. Thereafter, defendants and their trucks were taken to the Bensalem Township Police headquarters where the complaints were signed by the police officer in the presence of the justice of the peace. Defendants were permitted to call their employer, Gus Propper, the owner of the trucks, who arrived at the police headquarters a short time thereafter, together with one

Louis Bencardino, a contractor on whose job the trucks had been engaged at the time of the arrest. At the request of the owner of the trucks, an immediate hearing was not held but was continued, defendants released on bail and the hearing ultimately held on October 2, 1967. At the close of the hearing, decision was reserved at the request of the attorney for defendants. Ultimately, defendants were found guilty and fines and costs imposed pursuant to the provisions of the foregoing act of assembly.

Defendants assert in their petitions five reasons why their appeals should be sustained and they be found not guilty. The last three of these assert that, in some way, they were deprived of equal protection of the law, on the grounds that the Bensalem Township Police Department engaged in a method of enforcement which systematically eliminated other truck drivers and truck owners in competition with the Badenhausen Corporation, the owner of the scales, which is directly or indirectly in competition with their employer. We find these allegations are without merit.

At the hearing, defendants produced evidence showing that at or about the time of their arrests extensive construction was taking place in the township at or near the intersection of Route 1 and Street Road, including both roads, as well as the road commonly referred to as Old Lincoln Highway. It was established that the construction took approximately two years to complete, having been begun in 1967 and continuing until the early part of 1969. The area in question was a commercial area and at least one detour was necessitated on Street Road which was not usable for some period of time. As the result of the construction and resultant detours, some inconvenience resulted to the commercial establishments along the road as well as police problems resulting from the heavy flow of traffic on the highways that remained usable.

Therefore, believing that these three roads were under the jurisdiction of the highway contractor, the chief of police, in agreement with the township supervisors, elected to suspend enforcement of the overweight provisions to trucks engaged in the construction on the roads in question. It was their belief, and we need not find whether there was legal justification therefor, that this suspension of these provisions of The Vehicle Code was permissible under the law. It was apparently the contention of defendants, at the time of the hearing, that this selectivity of enforcement constituted a deprivation of equal protection of the laws to them under the Fourteenth Amendment of the United States Constitution. The purpose of this admitted exemption from application of the law on the part of the police was to facilitate the completion of the construction, to alleviate the police problem and the inconvenience to the merchants engaged in business on these highways. There was no intended discrimination against, or in favor of, any particular hauler or trucking company.

A discriminatory application of State law by State authorities can, in some instances, constitute a deprivation of equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution even where the law itself is constitutional in inception and purpose: Yick Wo v. Hopkins, 118 U.S. 356, 30 L. Ed. 220 (1885). Where the administration of the law, constitutional in principle, is directed exclusively against a particular class of persons so as to warrant the conclusion that it was applied by the authorities so charged, thus representing the State itself, with a mind "so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws" which is secured to all persons by the Fourteenth Amendment, the application is unconstitutional: Id. Though the law

itself be fair on its face and impartial in appearance, "yet if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution"; Id. However, the equal protection provisions of the Fourteenth Amendment do not make every minor difference in the application of laws to different groups a violation of the Constitution. It is only "invidious" distinctions which constitute a violation of equal protection: Williams v. Rhodes, 393 U. S. 23, 21 L. Ed. 2d 24, 89 S. Ct. 5 (1968).

The equal protection clause is not directed solely to the legislature but to every form of State action, legislative, executive or judicial. It prohibits discriminatory administration of valid statutes. The discrimination must be intentional or purposeful, and with the intention to discriminate against an individual: Shock v. Tester, 405 F. 2d 852 (8th Cir., 1969).

A statute may distinguish between different classes of people where the distinction is a reasonable one: Snowden v. Hughes, 321 U. S. 1, 88 L. Ed. 497 (1943). Therefore, if the State legislature in enacting legislation may distinguish between different classes of people where the distinction is a reasonable one, so also it is not a violation of equal protection for a public official to fail to enforce the law uniformly where the nonuniform enforcement would not have constitutional significance if the scheme had been enacted by the legislature: Two Guys From Harrison—Allentown, Inc. v. McGinley, 179 F. Supp. 944 (E. D. Pa., 1959).[1]

---

[1] This was a decision rendered by a three-judge district court with Hastie, J., now and then of the United States Third Circuit, writing the opinion.

Where the official action taken pursuant to a particular statute purports to be in conformity with the statute, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not, ipso facto, a denial of equal protection. The unlawful administration by State officers of a State statute, resulting in unequal treatment to those who are entitled to be treated alike, is not a denial of equal protection, unless there is shown to be present an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class of person, or it may be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another, not to be inferred from the action itself. But a discriminatory purpose is not presumed. There must be a showing of clear and intentional discrimination: Snowden v. Hughes, supra. The action of the State officer administering the law is presumed to be constitutional and the person attacking it has a heavy burden in attempting to establish that it was not: Upsey v. Secretary of Revenue, 193 Pa. Superior Ct. 466 (1960).

A showing of failure to prosecute other persons allegedly violating the same criminal statute as that with which the person prosecuted is charged does not, ipso facto, constitute a denial of equal protection to the person prosecuted, where there is no showing of knowledge on the part of the authorities of other violations or offenses. Moreover, a conscious exercise of some selectivity in law enforcement is not, in itself, a Federal constitutional violation. Even though there is a policy of selective enforcement, it must be shown that the selection was deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification: Oyler v. Boles, 368 U.S. 448, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962). In

order for such selectivity or discrimination to rise to the stature of an unconstitutional act, it must be accompanied by proof of purposeful and malicious discrimination: Moss v. Hornig, 214 F. Supp. 324 (Dist. of Conn., 1962). See also Washington v. United States of America, 401 F. 2d 915 (D. C. Cir., 1968). Discriminatory enforcement of a statute is not unconstitutional when done with some rational basis: Saunders v. Lowry, 58 F. 2d 158 (5th Cir., 1932); United States of America ex rel. Miller v. Rundle, 270 F. Supp. 55 (E. D. of Pa. 1967); United States of America v. Palermo, 152 F. Supp. 825 (E. D. of Pa. 1957).

Considering these standards, it is patent that defendants have failed to carry their burden of showing that the application of the overweight provisions of The Vehicle Code to them in this instance constituted such a willful, intentional and malicious discrimination as to result in a deprivation of their equal protection of the laws under the Fourteenth Amendment of the United States Constitution. Regardless of whether the local authorities could lawfully suspend application of The Vehicle Code overweight provisions to trucks operating on the highways under construction, their purpose in electing to do so was certainly rational and reasonable. They had a proper concern for the expeditious completion of the highway construction project. The evidence showed only one incident where a truck driver had been stopped by a police officer for a suspected overweight where the prosecution had been overruled by the chief of police. There is serious question whether that operator was operating on the highways under construction, but, in any event, we are satisfied that the chief of police was under the impression that he was so operating at the time the officer stopped him. The evidence would seem to indicate that defendants

herein were not operating on the highways under construction at the time of their arrest and, therefore, we cannot find any discrimination against them by virtue of the failure of the local police to enforce these provisions against defendant in the other case. Therefore, this assault by them upon their arrest must fail.

Defendants allege as their second reason for appeal the fact that the justice of the peace did not render his decision promptly and timely in accordance with law. In this regard, we note only that the transcript from the justice of the peace reflects that the attorney appearing for defendants at the hearing before the magistrate[2] requested the justice to withhold decision to have discussions with the district attorney. There was no evidence of record at the hearing before the court to refute this assertion and, therefore, this allegation in the petitions is without merit.

Of more serious import, although not raised by the petitions, defendants asserted at the close of the Commonwealth's case before the court that their appeals should be sustained because defendants were not given a right to an immediate hearing by the justice of the peace.[3] Defendants were arrested on view pursuant to the last paragraph of this section of the overweight provisions of The Vehicle Code. See the Act of January 25, 1966, P. L. (1965) 1584, sec. 1, 75 PS §903. Where any person is arrested on view for a summary violation of The Vehicle Code such person "so arrested shall be given the opportunity of having an immediate hearing, or of giving bail, as provided in this act, for a hearing before the magistrate, to be held at a date not more than ten

---

[2] The same attorney representing them on appeal.

[3] The justice of the peace testified that at the time of the arrest the owner of the truck asked for a continuance of the hearing, and that request was granted.

(10) days from the date of such arrest, or of waiving a hearing and giving bail for his appearance in court": Act of April 29, 1959, P. L. 58, sec. 1202, 75 PS §1202(d). Where the proceeding is instituted by arrest on view, failure to proceed pursuant to this provision can be fatal to the proceedings: Commonwealth v. Bryant and Commonwealth v. McCall, 32 D. & C. 2d 766, 13 Bucks 366 (1963), and Commonwealth v. Feyka, 62 D. & C. 353 (1947). However, procedural defects are waived by appeal, assuming that the justice of the peace had jurisdiction over the subject matter: Commonwealth v. Davidson, 412 Pa. 279 (1963); Commonwealth v. Trufley, 170 Pa. Superior Ct. 200 (1952); Commonwealth v. Burall, 146 Pa. Superior Ct. 525 (1941); Commonwealth v. Delikat, 12 Bucks 306 (1961). Lack of jurisdiction by the magistrate over the subject matter is not waived by appeal: Commonwealth v. Gill, 166 Pa. Superior Ct. 223 (1950); Commonwealth v. McCloskey, 18 Bucks 511 (1968). Failure to give appellants a choice of an immediate hearing or to post bail is not a jurisdictional matter and is waived by the taking of the appeal: Commonwealth v. Christensen, 12 Chester 107 (1964), and Commonwealth v. Naylor, 80 York 113 (1966). Likewise, the fact that the hearing was held beyond the 10-day period does not, ipso facto, dictate an acquittal but is a procedural matter which is waived by the taking of appeal: Commonwealth v. Walker, 28 D. & C. 2d 727 (1962), and Commonwealth v. Deisroth, 1 D. & C. 2d 504, 4 Bucks 163 (1954). Defendants are not challenging the jurisdiction of the justice of the peace over the subject matter and, therefore, have waived these procedural defects by virtue of their appeal.

We are satisfied that the Commonwealth has proved the guilt of each defendant beyond a reasonable doubt and, accordingly, we must deny the appeals.

The testimony of the police officer making the arrest was abundantly clear, and we accept as true that each of these trucks was overweight. Although there seemingly was some question raised by defendants' cross-examination of some of the Commonwealth's witnesses with regard to the accuracy of the scales used, the Commonwealth is not required to produce evidence of accuracy of the scale and there was no evidence forthcoming from defendants showing the scale to be inaccurate: Commonwealth v. Caporiccio, 210 Pa. Superior Ct. 230 (1967)[4].

Defendants contend that an acquittal is mandated by virtue of the police officer's alleged refusal to reweigh these vehicles on other scales. Concededly, the Act of August 27, 1965, P. L. 416, sec. 1, 75 PS §904, provides that whenever the weighing shows "that the gross weight of a vehicle or combination of vehicles . . . is unlawful, the *operator* may forthwith elect to have the same reweighed, in which case the peace officer shall reweigh the same upon different scales which shall be the nearest available stationary scales to the point at which the weighing occurred . . .". (Italics supplied.)

The word "operator" is defined in The Vehicle Code as follows:

"Every natural person who is in actual physical control of a motor vehicle or tractor upon a highway whether or not licensed as an operator under the laws of this Commonwealth": Act of December 1, 1959, P. L. 1626, sec. 1, 75 PS §102.

The evidence which we accept as credible was to the effect that each truck was placed upon the scale in question, the scale balanced and activated and the weight as indicated recorded. In each case, defendants were in a position to observe the weight as recorded.

---

[4] In fact, the evidence was virtually conclusive that the scale was accurate.

Upon the weight being recorded, each of defendants was directed to proceed to police headquarters, which they did. At police headquarters, defendants were permitted to contact their employer, Gus Propper. He arrived some time later in the company of Bencardino. The testimony of Propper and Bencardino was that Bencardino requested a reweigh and the testimony of defendants failed to indicate that they had done so.[5] The word "operator" as used in the overweight provisions of The Vehicle Code has been defined, consistently with the definition of that word as contained in The Vehicle Code hereinbefore set forth, to be the person who is in actual physical control of the motor vehicle at the time of its operation upon the highways. The owner of the motor vehicle is not an "operator" for purposes of application of the overweight provisions of The Vehicle Code: Commonwealth v. Robert H. Carr and Son, 196 Pa. Superior Ct. 410 (1961).[6] The request for a reweigh not having come from the "operator" as required by the act, the failure to give a reweigh[7] does not require an acquittal in this case. Therefore, we hereby enter the following

## ORDER

And now, April 13, 1970, for the reasons set forth in the foregoing opinion, each of defendant-appellants is found guilty as charged; defendant, Melvin W. Kessler, is directed to pay the costs of prosecution and fine for the use of the Township of Bensalem in the sum of $2,600; defendant, George Emberger, is di-

[5] Although there is a disagreement between the testimony of the police officer and that of Propper and Bencardino as to the circumstances under which the reweigh was requested, we accept the testimony offered by the officer in this regard.

[6] A fortiori, neither is the lessor of the trucks.

[7] Even if we construe the "request" as made to be a request for reweigh.

rected to pay the costs of prosecution and a fine for the use of the Township of Bensalem in the sum of $1,650. Both defendants are directed to appear in court room no. 2 at 10 a.m. on May 8, 1970, for the formal imposition of the foregoing sentence, but neither defendant will be required to appear if his sentence has been complied with on or before that date.