## 389. SIMS v. THE STATE.

1. This court will judicially recognize that "craps" is a game played with dice, and that a "quarter," as indicative of value, means twenty-five cents.
2. Newly discovered evidence, solely for the purpose of impeaching a witness, is not sufficient to authorize a new trial; nor would newly discovered evidence that would probably not produce a different verdict require a new trial.
3. There was some evidence to support the verdict, and the trial judge was satisfied. This court must be content.

Accusation of misdemeanor, from city court of Dalton—Judge Longley. February 23, 1907.

Argued April 22,—Decided May 9, 1907.

F. K. McCutchen, for plaintiff in error.

Sam. P. Maddox, solicitor-general, contra.

HILL, C. J. Plaintiff in error was convicted, in the city court of Dalton, of the offense of gaming. The indictment charged that he "did play for money and other things of value, at a game of craps played with dice." He filed a motion for a new trial, on the statutory grounds, and on the ground of newly discovered evidence; and he brings to this court the judgment overruling the motion and refusing to grant a new trial.

The only witness for the State was a fellow player, who testified, that, "about January 1, 1907, Whitfield county, he and Frank Lomax and Bud and Frank Sims [the defendant] were at the house of Mrs. Frank Lomax, gambling;" that they were "shooting craps for a quarter on a corner." This was all the testimony introduced by the State, against the defendant, and it is insisted that it did not prove the offense charged.

1. It is said that the word "gambling," used by the witness, was simply a conclusion, and was not testimony; that the word "shooting" did not mean anything, and was not synonymous with the word "playing," and that there was nothing to show what sort of a game "craps" was, or that it fell within the description of the games specified in section 401 of the Penal Code, or that the word "quarter" indicated anything of value, or that money was being played for, or that the word "corner" means betting. We think none of these objections well founded. The law prohibits gambling or playing and betting "for money, or

other thing of value, at any game played with cards, dice, or balls." The statute does not designate the specific name of the game which is prohibited; it simply says it must be a game played "with cards, dice, or balls." If the indictment charged that the game played was "poker, a game played with cards," and the evidence was that the game of poker was played, "quarter limit," we think the charge would be fully made out, in so far as establishing the fact that the game played was played with cards for money. Poker is a well-known American game, and, we understand, is always played with cards, and is generally considered as a gentleman's game, played for diversion or gain. But even when played for diversion, chips, representatives of value, are generally used. Craps is a well-known game of chance, played with dice. The Standard Dictionary defines it as "A game of chance in which the object is to guess the number thrown on two dice." It is the popular game of our negro population, who play it for small stakes. The vernacular descriptive of the game is "shooting craps." The word "shooting" partly indicates how it is played, and, in this connection, is synonymous with the word "playing." Indeed, the word "playing," as used in this statute, is simply a generic term. To shoot craps is to play craps. To roll ten pens is to play ten pens. We may say en passant that the humble "crap shooter" is more frequently detected by the vigilant officer than the aristocratic "poker player."

We do not think the intellect would be greatly fatigued in coming to the conclusion that the word "quarter," as used in the testimony, meant twenty-five cents. A "nickel" means five cents, and a "quarter" means twenty-five cents, and it would tax the imagination to give to these words, as indicative of value, any other signification. The word "gambling," used in this testimony, was descriptive of the character of the game that was played. Taking all the words together in this testimony, we do not think the jury had any trouble in understanding what was meant, or in arriving at the conclusion that the charge in the indictment was proved.

2. The alleged newly discovered evidence, which it was contended would prove an alibi, we think, would be insufficient for that purpose, especially in view of the fact that the evidence at the trial did not definitely locate the time when the game was

played, the statement being that the game was played "about January 1, 1907." We do not think this statement is contradicted by the general statement, contained in the allegation as to the newly discovered evidence, "that the said Sims, the defendant, ever since December 27, 1906, has gone home to dinner at eleven thirty o'clock, and returned to the store at twelve thirty o'clock, as he did on January 1, 1907." This evidence is not material, and would probably not produce a different verdict. The other alleged newly discovered evidence, being solely for the purpose of impeaching a witness for the State, is not sufficient, under many decisions of the Supreme Court, to authorize the grant of a new trial.

3. The testimony in this case is not entirely satisfactory to this court, but the jury saw the witness and heard the testimony, and were in a better position than we are to determine its credibility, and the trial judge approved the verdict.

*Judgment affirmed.*

POWELL, J., specially concurring. Personally I am unwilling to admit such an accurate knowledge of these games of chance as is evinced by the learned Chief Judge; but in a purely juridic way, I think we can take cognizance of these matters.