71058. EVANS v. THE STATE.
(338 SE2d 48)

BIRDSONG, Presiding Judge.

The defendant, Billy Joe Evans, appeals his conviction of traf-

ficking in marijuana, unlawful possession of alcoholic beverages and possession of a distilling apparatus. Sheriff Larry Sanders of Hart County, Georgia, had received information about marijuana growing on property adjacent to a mobile home in which the defendant lives. He placed the property under observation and then obtained a search warrant. It was issued in the name of Manuel Evans, the defendant's father. The sheriff was assisted by GBI agents in executing the search warrant. After the defendant observed the officers in the execution of the warrant, he went to the sheriff and admitted that "it's mine . . . everything was his." The officers confiscated a distilling apparatus, containers filled with alcohol which tested out at 42 proof to 92 proof, and several boxes of marijuana leaves; and pulled up approximately 1,600 growing marijuana plants.

GBI Agent Wakefield saw the defendant the following day in the jail in Hart County and advised him of his *Miranda* rights and obtained a statement from him in which he admitted the marijuana and the "still" were his property alone. Defendant told him he ran the still two or three times a month and made six gallons on each run but had not sold any of the marijuana. The defendant appeals his conviction of all counts. *Held*:

1. It is alleged that Evans' confession is inadmissible because he was under the influence of drugs administered by his doctor prior to giving a statement to the GBI. The defendant was jailed on the afternoon of August 31, 1982, and Sheriff Sanders saw that he was upset and called a doctor. The doctor found defendant tense, anxious and restless, and gave him a shot of chlorpromazine, a tranquilizer. It has an effect upon the brain that produces a tranquilization-sedation effect. The doctor testified that he "would anticipate more the tranquilization and sedation without that much impairment to his mental faculties, but [if] a person who was sensitive to it," his ability to think and reason could be affected. If this occurred, an observer would notice an accompanying sedation or drowsiness. When the doctor saw him on September 1, during the mid-part of the day, he had given him one shot early in the evening of the previous day, another shot near midnight, and the third shot of the tranquilizer prior to him giving his confession to the GBI. He was of the opinion that defendant was in possession of his faculties and there was mental clarity when he saw him before giving him the third shot. The GBI agent was of the opinion that defendant was not intoxicated by alcohol or drugs and that nothing was physically wrong with him when he made his statement. The trial court found the confession to be freely and voluntarily given and admitted it in evidence.

Evans contends that it was error to admit his confession because "it did not meet the expressed standards in *Beecher v. Alabama*, 408 U. S. 234. . . ." *Beecher* involved a suspect who was shot in his leg

when he fled from the police. A review of those facts reveals that a loaded gun was placed against defendant's face, while another police officer pointed a rifle against the side of defendant's head. After defendant denied his guilt, the officer called him a liar and said: "If you don't tell the truth, I am going to kill you." An officer fired a rifle into the ground next to the defendant's head, and he confessed. One hour after his arrest, the defendant was taken to a hospital because the gunshot to his leg "had blown most of the bone out of [that] leg" and he was given two injections of morphine for the pain. The defendant claims he remembers nothing after receiving the morphine but an officer said he gave another confession. The Supreme Court reversed the first conviction which was based on the first confession. The second conviction was based upon the second confession, made one hour after the shooting, but after the defendant had been administered two shots of morphine. The Supreme Court again reversed, holding that the "oral confession, made one hour after the arrest . . . was surely a part of the same stream of events" as those which necessitated reversal of the first conviction. Id. It was found that the circumstances of the case "compels the conclusion that this petitioner's [confession was] the product of gross coercion." Id. It is obvious that the facts of the instant case are distinguishable from those of *Beecher. Beecher* was reversed on the basis of gross coercion, and the basis for the present enumeration of error is a claim of lack of comprehension on the part of a defendant after receiving two shots of a tranquilizer on the day preceding the confession, and a third shot a few hours before a second confession.

Whether a suspect is mentally capable of, and did make a knowing and intelligent waiver of, his *Miranda* rights is a factual and credibility determination for the trial court and will not be disturbed on appeal unless clearly erroneous. *Findley v. State*, 251 Ga. 222, 226 (304 SE2d 898); *Mullis v. State*, 248 Ga. 338 (9) (282 SE2d 334); *LaRue v. State*, 171 Ga. App. 371, 372-373 (319 SE2d 468). There is ample evidence to support the findings of the trial court and its ruling is not clearly erroneous.

2. The state confiscated almost two pounds of marijuana which had been stripped from the plants' stalks and placed in boxes. The 1,600 growing plants had been burned. The State Crime Lab determined that the substance confiscated was marijuana. The search and arrest of the defendant occurred on August 31, 1982. Indictment was returned during the February Term of 1983. On February 20, 1984, defendant filed a "Motion to Permit Lab Analysis," in which he asked "to examine the material evidence against him and to verify the tests that have been performed to determine the alleged identity of the substances involved in the indictment as being marijuana and non-tax paid liquor." However at trial, the state argued that the request was

not timely, as the motion was not filed until February 20, 1984, and the case had already been continued from the last term. Counsel for defendant then argued that "even if my motion was timely, the evidence had been destroyed the same day that it was recovered so it would have been impossible for me to be timely." The court inquired of counsel that what he had requested was to analyze the substance, so he should address "the two pounds" possessed by the crime lab. Counsel replied: "No sir, this has to do with trafficking because of the quantity being two thousand pounds. That's what I want to have my analysist [sic] come in and determine the weight of the marijuana, but it was destroyed on the same day it was received, therefore I'm trying to show the court it's impossible for me to have the expert to come in and do that because the state has destroyed the evidence."

Counsel has confused the subject matter of his motion. Prior to trial, he requested to analyze and "verify the tests that have been performed to determine the alleged identity of the substances involved. . . ." But, at trial, since defendant was charged with possessing more than 2,000 pounds of marijuana, he said the object of his analysis is now "the quantity being two thousand pounds."

Our Supreme Court, in *Patterson v. State*, 238 Ga. 204, 206 (232 SE2d 233), held: "Where the defendant's conviction or acquittal is dependent upon the *identification of the substance as contraband*, due process of law requires that analysis of the substance not be left completely within the province of the state." (Emphasis supplied.) Hence, where conviction is dependent upon "identification of the substance as contraband" the defendant is entitled "to have his own expert analyze the contraband independently." *Partain v. State*, 238 Ga. 207, 208 (232 SE2d 46). This was what the motion requested, but that basis was abandoned at trial and a new basis was argued: Defendant wanted to examine all the destroyed evidence to determine if it weighed 2,000 pounds. A proper motion is permitted to ascertain the contraband nature of the confiscated matter. What the defendant argues here is the amount of contraband, not the identification as contraband. The officers testified that they destroyed 1,600 growing marijuana plants and that a mature marijuana plant will produce from two and one-half pounds to three and one-half pounds of dried marijuana. The officer said that he took the lower end of the scale (2-½) and multiplied it by the 1,600 plants and arrived at a figure of 4,000 pounds of marijuana. This estimate applied only to marijuana leaves and did not include the weight of the stalk.

We find no merit to the enumeration for three reasons. First, it was untimely. *Partain*, supra, p. 208. Second, counsel abandoned the basis for the motion filed before trial. And last, although this court has denounced the practice of destroying evidence without prior notice to an accused, we found no prejudice to an accused charged with

trafficking in marijuana by possessing more than 100 pounds where the state retained only 100 grams. See *Lang v. State*, 165 Ga. App. 576 (4) (302 SE2d 683). See also *Duckworth v. State*, 246 Ga. 631 (8) (272 SE2d 332); *Emmett v. State*, 243 Ga. 550 (3) (255 SE2d 23); *Moore v. State*, 240 Ga. 807, 814 (243 SE2d 1). The *amount* of contraband confiscated like any other element of the offense must be proved by the state beyond a reasonable doubt. In the instant case, the state's expert testified that a mature marijuana plant would produce from two and one-half pounds to three and one-half pounds of marijuana leaves. Even if the mature plant produced only one and one-fourth pounds of marijuana leaves, this would amount to 2,000 pounds. The state introduced testimony and photographs of the maturity of the plants and that some of them were 15 feet high. We find that a rational juror could reasonably have found proof beyond a reasonable doubt that the amount of marijuana confiscated was more than the amount charged, 2,000 pounds. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Lang*, supra. This enumeration is without merit.

3. The trial court properly permitted the GBI agent to testify as to the weight of the marijuana found growing in the fields. It is within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular art, science or profession as to entitle him to be an expert. *Redd v. State*, 240 Ga. 753, 755 (243 SE2d 16). "To qualify as an expert (see Code § 38-1710 [now OCGA § 24-9-67]), generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study." *Bowden v. State*, 239 Ga. 821, 826 (238 SE2d 905). The witness gave a history of the training and schooling he had completed to prepare himself for his profession. The trial court's ruling that the witness was qualified is supported by the evidence of record. We find no abuse of discretion. *Morris v. State*, 159 Ga. App. 600, 601 (284 SE2d 103).

4. We have examined the last enumerated error and find it to be without merit.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED NOVEMBER 13, 1985.

*Rodger E. Davison*, for appellant.
*Lindsay A. Tise, Jr., District Attorney*, for appellee.