### 71206. DUNN v. THE STATE.
(341 SE2d 877)

BEASLEY, Judge.

On October 6, 1983 appellant was convicted by a jury of trafficking in marijuana and sentenced to five years imprisonment and fined $25,000. His motion for new trial was denied, and he appeals.

1. Appellant first asserts that the state failed to prove possession of "more than 100 pounds of marijuana" necessary to convict under Code Ann. § 79A-811 (c) (OCGA § 16-13-31 (c)). He argues that although the state introduced evidence that the weight of the contraband totalled 260 pounds, this was not probative because this figure included the weight of "binding material used to tie the stalks," dirt, and stalks and roots of the plants, which are not calculable as contraband.

The law in effect at the date of the alleged offense controls. OCGA § 1-3-5. Accord *Holley v. State*, 157 Ga. App. 863, 867-868 (5) (278 SE2d 738) (1981). In the case at bar, the date of the offense is September 28, 1982. Thus, Code Ann. § 79A-802 (o), effective from April 22, 1982 until its repeal on November 1, 1982, is controlling. Ga. L. 1982, p. 2403, §§ 10, 15, 24 (a), 24 (c).

Code Ann. § 79A-802 (o) defined marijuana as "all parts of the genus Cannabis, whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, . . . of such plant, its seeds or resin; but *shall not include the completely defoliated mature stalks* of such plant . . . , or the completely sterilized samples of seeds of the plant which are incapable of germination." (Emphasis supplied.)

"To sustain a conviction, there must be proof to establish that the offense occurred prior to the return of the indictment and within the statute of limitation." *Jefferson v. State*, 136 Ga. App. 63, 66 (5) (220 SE2d 71) (1975). The state may prove any date within this period. *Geckles v. State*, 177 Ga. App. 70 (2) (338 SE2d 473) (1985). Here the indictment was returned on March 9, 1983. The statute of limitation on the trafficking charge is four years from the date of the crime.

The evidence reflects the following: On September 28, 1982, the date set out in the indictment as the day of the offense, sheriff and police department investigators, acting on a tip, discovered a freshly raked field with dried marijuana leaves lying along the edges about 100 yards from appellant's home. Forty to fifty yards from the home, two "big bundles" of marijuana bound at the roots with twine were

spotted hanging in the trees. Several more bundles were also discovered hanging in the trees closer to the home. The plants were twelve to sixteen feet in length and "fairly bushy and heavy." It was estimated that each bundle contained a dozen individual plants. Also observed was a pile of about fifty marijuana stalks, each stalk eight to ten feet in length, which had been stripped of leaves, a pile of dried marijuana lying on the ground, about fifty unstripped stalks located under a ladder, and dried marijuana leaves along the sides of a path leading from the ladder to appellant's house.

Investigators continued to observe the property daily for approximately one week. The contraband remained untouched and in substantially the same condition as when it was first observed during the course of the surveillance, except that some drying had occurred.

On October 5 a search warrant was executed and the contraband seized. To aid in transporting the contraband, police separated and bound the marijuana into ten bundles, each bundle at that time weighing about twenty-five to thirty pounds and each containing a certain number of the stripped stalks, each stripped stalk estimated at less than one pound in weight. At least two hundred plants were seized. Contraband lying on the ground was gathered, including the marijuana found under the ladder, and bagged. Photographs of the seizure were taken. The evidence was then loaded onto two trucks and transported to the police department evidence room where it remained until October 5. The debris from the trucks was apparently also collected, bagged, and stored.

On November 3, the bundles were loaded onto one truck for weighing, and the debris which had shed from the bound bundles while in storage was swept up, placed in plastic bags, and also loaded onto the truck for weighing. The plants had "already dried out" by this time. The evidence registered 260 pounds on a scale which calculated weight to the nearest multiple of twenty.

At trial an expert witness testified that from thirty to fifty fully grown marijuana plants standing approximately seven or eight feet high could be seen in a photo taken at the confiscation. He estimated that a "typical example of a plant some seven feet in height with a stalk system similar to" that shown in another photo of one of the plants seized, which had dried for two or three days, "could weigh anywhere from five to ten pounds per plant." He further stated that between forty and seventy percent of a marijuana plant pulled from the soil in its growing stages would be leafy material, with thirty to sixty percent stalk and roots. In reference to yet another photograph of a plant seized, he testified that less than forty percent was stalk and from ten to fifteen percent roots. He added that a plant removed from soil and dried would have a lesser percentage of weight attributable to roots and stalk.

"In order to sustain the judgment of conviction, the evidence need not exclude *every* inference or hypothesis except the guilt of the accused, but only *reasonable* inferences and hypotheses, so as to justify the inference, beyond a reasonable doubt, of guilt." *Goode v. State*, 130 Ga. App. 791, 792 (2) (204 SE2d 526) (1974). "The *amount* of contraband confiscated like any other element of the offense must be proved by the state beyond a reasonable doubt." *Evans v. State*, 176 Ga. App. 818 (2), 822 (338 SE2d 48) (1985). Here, although the material weighed contained ropes, dirt, and possibly "completely defoliated mature" stalks not calculable under Code Ann. § 79A-802 (o), the evidence was more than ample for the jury to infer beyond a reasonable doubt that appellant possessed over 100 pounds of marijuana.

First, the marijuana was not weighed for some five weeks from the date the uprooted plants were discovered, the date of the alleged offense. There was evidence introduced that the plants had dried by this time, that the weight of marijuana decreases as it dried, and that at least sixty percent of green marijuana leaf is water. Thus, it is reasonably inferable that the weight of the marijuana on the date of the charged offense was substantially greater than the 260-pound weight reflected by the weighing some five weeks later.

Secondly, regardless of the "drying" factor, even if we were to assume that the fifty stripped stalks were "completely defoliated mature stalks," and thus non-calculable, and even if each of these stalks weighed as much as one pound, a high estimate based on the given testimony, at least 210 pounds (260 - (50 x 1)) remain. It was reasonable for the jury to conclude that the rope and dirt did not weigh 110 pounds. There was testimony that there "was not very much" dirt. And, as for the rope, the rope binding the plants at their discovery was in evidence for the jury to evaluate, and the jury also had use of a photograph to determine how substantially the additional rope used by the police to further bind the plants to ease their transport affected the weight of the contraband. Additionally, even if as much as forty percent of the unstripped plants was stalk, and "completely defoliated mature stalk" at that, only an additional 84 pounds would be excluded (210 x .40).

Lastly, appellant's contention that marijuana roots are not chargeable is without merit. Code Ann. § 79A-802 (o) specifies that "all parts of the plant," with limited exception, are included. The roots, being a part of the plant, are not exempt.

Upon a review of all the evidence, "[w]e do not think any remotely reasonable doubt exists in this case that there was proved at least 100 pounds of chargeable marijuana . . ." *Lang v. State*, 165 Ga. App. 576, 582 (4) (302 SE2d 683) (1983); see also *Evans*, supra; *Meeks v. State*, 178 Ga. App. 9 (3) (341 SE2d 880) (1986). Compare *Payton v. State*, 177 Ga. App. 104 (2) (338 SE2d 462) (1985).

2. Appellant next enumerates that the trial court erred in admitting into evidence the machine print-out from the November 3 weighing since the state failed to turn it over to appellant despite an OCGA § 17-7-211 request. The print-out at issue simply reads: "0 0 5 1 4 0 GR," "0 0 4 8 8 0 T," and "0 0 0 2 6 0 NT."

The print-out contains no explanation of the meaning of the numerals or letters. Thus, because neither does it contain the conclusions of an expert which decipher the information and instead requires interpretation by the machine's operator to attain significance, it is not a "scientific report" and is thus not discoverable under OCGA § 17-7-211. *Williams v. State*, 251 Ga. 749, 754 (3) (c) (312 SE2d 40) (1983) (which held a microspectrophotometer graph print-out was not a scientific report).

3. Appellant's remaining enumerations, challenging the admittance of testimony by the weight machine operator as to the results of the weighing and the denial of appellant's motion for continuance, relate to the alleged OCGA § 17-7-211 violation. As explained in Division 2 of this opinion, there is no OCGA § 17-7-211 violation; therefore these enumerations are meritless.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 7, 1986 —
REHEARING DENIED FEBRUARY 24, 1986 —

*Howard P. Wallace*, for appellant.

*Johnnie L. Caldwell, Jr.*, District Attorney, *Paschal A. English, Jr., J. David Fowler, Christopher C. Edwards*, Assistant District Attorneys, for appellee.