## 76758. WHATLEY v. THE STATE.
### (375 SE2d 245)

BANKE, Presiding Judge.

The appellant was convicted of gambling, commercial gambling, possession of more than an ounce of marijuana, and possession of a firearm by a convicted felon. He appeals from the denial of his motion for new trial. *Held*:

1. The appellant asserts that the commercial gambling conviction was not supported by the evidence and that the trial court thus erred in denying his motion for a directed verdict on this count. The appellant was charged with violating OCGA § 16-12-22 by "intentional[ly] operat[ing] and participat[ing] in the earnings of a gambling place." The term "gambling place" is defined by OCGA § 16-12-20 (3) as "any real estate, building, room, tent, vehicle, boat, or other property whatsoever, *one of the principal uses of which* is the making or settling of bets; the receiving, holding, recording, or forwarding of bets or offers to bet; or the conducting of a lottery or the playing of gambling devices." (Emphasis supplied.) The state was, of course, required to prove a violation of the statute in the manner charged in the indictment. See *Patterson v. State*, 181 Ga. App. 68 (351 SE2d 503) (1986).

All of the charges against the appellant were predicated on evidence seized from his home during the execution of a search warrant for marijuana. The evidence offered in support of the commercial

gambling charge consisted of the following: Several hundred parlay stubs and a notebook containing notations on football games and betting amounts, all of which were seized from a coffee table in the living room; a bank bag containing parlay sheets and football "line sheets" seized from his bedroom; and a second notebook containing betting notations seized from an undisclosed location in the house. No evidence was presented indicating the length of time any of these items had been on the premises, nor was there any evidence that gambling activity was occurring there on an ongoing basis.

Under the circumstances, there is no evidentiary basis whatever for an inference that the conduct of gambling operations was "one of the principal uses" of the residence, and there is consequently no basis for a conclusion that the house was being used as a "gambling place" within the meaning of the statute. The appellant's conviction on the commercial gambling charge is accordingly reversed.

2. The appellant contends that certain statements which he made following his arrest should have been excluded from evidence on the ground that they were induced by threats on the part of the police. The evidence introduced at the *Jackson v. Denno* hearing disclosed that after he had been placed under arrest and given his *Miranda* warnings, the appellant advised the police that he desired an attorney, whereupon the police ceased all questioning but advised him that both he and his wife would be charged with violation of the Controlled Substances Act and gambling. Thereafter, the appellant, of his own initiative, expressed a desire to discuss the matter further with the police, who reminded him of his election to have an attorney. The appellant then waived his right to an attorney and proceeded to acknowledge sole ownership of the illegal items found at his residence.

"[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona*, 451 U. S. 477, 484, 485 (101 SC 1880, 68 LE2d 378) (1981). (Emphasis supplied.) As the evidence of record shows that the officers immediately ceased their interrogation of the appellant when he requested counsel and that it was he who thereafter initiated further communication between them, the trial court was authorized to conclude both that the statements were made freely and voluntarily and that they were not elicited in violation of the appellant's right to counsel.

3. In his third enumeration of error, the appellant contends that the trial court erred in refusing to grant him a directed verdict on the marijuana possession charge because it was shown that others had equal access to the premises. However, the transcript reflects that the

appellant confessed to the police that the marijuana was in fact his. Consequently, this enumeration of error is without merit.

4. Finally, the appellant contends that the trial court erred in refusing to grant him a directed verdict on the marijuana possession charge on the ground that there was no evidence to prove that more than an ounce of marijuana was seized. We observe that the appellant did not assert the state's failure to prove the weight of the marijuana in the trial court as a ground for his motion for directed verdict, an omission which, technically speaking, renders this enumeration of error meritless. However, we will nevertheless address the appellant's underlying argument that there was a failure of proof as to the marijuana conviction, since the sufficiency of the evidence in a criminal case may always be addressed on appeal, even in the absence of an enumeration of error specifically raising the issue. See *Redmond v. State*, 252 Ga. 142 (1) (312 SE2d 315) (1984).

While the state established that the appellant was in possession of the marijuana, there was indeed no evidence to establish its weight; and in the absence of such evidence there was no basis for treating the offense as a felony. See OCGA § 16-13-2 (b); *Taylor v. State*, 144 Ga. App. 534 (2) (241 SE2d 590) (1978). We reject the state's contention that defense counsel cured this omission during his argument for a directed verdict on equal access grounds, by making the statement that "the 2.7 ounces of marijuana were found outside the home." To be considered binding against his client as a stipulation of fact, a statement made by counsel during the trial of a case must constitute a "[d]istinct and formal admission[ ] of fact . . . *made for the express purpose of dispensing with formal proof.*" 7 AmJur2d Attorneys at Law, § 151, p. 208. (Emphasis supplied.) Cf. *Nat. Assn. for Advancement of Colored People v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957); *McCoy v. McSorley*, 119 Ga. App. 603, 604 (2) (168 SE2d 202) (1969).

Viewed in the context in which it was made, the statement at issue obviously cannot be considered a distinct and formal admission of fact made for the express purpose of dispensing with formal proof on the issue of the weight of the marijuana; and in any event, the statement was not made in the presence of the jury nor otherwise brought to its attention. Thus, it clearly could not have provided the basis for the jury's finding that the appellant was in possession of more than an ounce of marijuana. While it is conceivable that the jurors might have been authorized to determine that the marijuana weighed more than an ounce by examination of the physical evidence itself if the actual weight had been, say, a pound or more, we cannot presume that they were equipped to make such a determination under the circumstances as they actually existed. The appellant's felony sentence for marijuana possession is consequently vacated, and

the case is remanded to the trial court for the imposition of a misdemeanor sentence on this count.

*Judgment affirmed in part, reversed in part, and vacated with direction in part. Birdsong, C. J., McMurray, P. J., Sognier and Benham, JJ., concur. Deen, P. J., Carley, Pope, and Beasley, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

While concurring fully with the dissent of Judge Beasley, additional comments are appropriate. As pointed out in the majority opinion, the issue is whether a "house was being used as a 'gambling place' within the meaning of the statute."

The defendant was " 'at the house of Mrs. Frank Lomax, gambling'; that they were 'shooting craps for a quarter on a corner.' . . . We may say en passant that the humble 'crap shooter' is more frequently detected by the vigilant officer than the aristocratic 'poker player.' . . . [W]e do not think the jury had any trouble in understanding what was meant." *Sims v. State*, 1 Ga. App. 776, 776-777 (57 SE 1029) (1907).

Gambling is gambling no matter what its title. "Gambling like many other practices in modern life has had its evolution and in no field has the wit of man been shrewder but the courts have generally held that, if the elements constituting gambling are present, the name by which called will not defeat the penalty." *Creash v. State*, 179 S. 149, 152 (Fla. 1938).

BEASLEY, Judge, dissenting.

I concur in Divisions 2, 3, and 4 but respectfully dissent with respect to Division 1.

1. The indictment charges that defendant did "intentionally operate and participate in earnings of a gambling place, . . . a residence. . . ." This is a violation of OCGA § 16-12-22 (a) (1).

A "gambling place" is defined as any "building . . . or other property whatsoever, one of the principal uses of which is . . . the receiving, holding, recording, or forwarding of bets or offers to bet; . . . ." OCGA § 16-12-20 (3).

In defendant's house were found, and introduced into evidence along with explanation by an Internal Revenue Service agent as an expert, the following items: approximately 300 parlay sheet stubs for football games, the majority of which bore names or initials as well as written dollar amounts; football line sheets; a bank bag with 3 complete parlay sheets; a paper with the handwritten words "Whatley 8 Parlay"; a ledger notebook with about 10 pages of handwritten names, football team names, dates, and dollar amounts; a notebook upon which was handwritten "Carlton N. Left. 137.50 will call Bet in

10/26/86 -Sat- $100.00 Mich St — 21"; a paper with a newspaper clipping of world temperatures taped to it and the handwritten notation "Pick three cities with the hightes (sic) temp or three with the lowest. All cities most circle. Ties Loses (sic)." These items were in various parts of defendant's house.

Although the obvious principal use of defendant's house was as his and his family's residence, the statutory definition of gambling places does not exclude residences or places used primarily as residences. It embraces buildings "*one* of the principal uses of which is" one of the forbidden activities. The proscribed conduct includes "holding . . . bets or offers to bet." It also includes "recording . . . bets or offers to bet." These would be included in the prohibition against "operating or participating in the earnings of a gambling place."

There being evidence that defendant was engaged in such activity, and that one of the principal uses of his residence was to hold the bets and house his recording activity, the conviction of commercial gambling should be affirmed. "[T]he definition of 'gambling place' in § 16-12-20 (3) is sufficiently clear to warn persons of ordinary intelligence of what places to avoid, and is sufficiently clear to discourage or preclude arbitrary enforcement decisions concerning what places constitute 'gambling places.'" *Izzo v. State*, 257 Ga. 109, 110 (356 SE2d 204) (1987).

2. As to Division 4, compare *Dunn v. State*, 178 Ga. App. 6 (1) (341 SE2d 877) (1986).

I am authorized to state that Presiding Judge Deen, Judge Carley, and Judge Pope join in this dissent.

DECIDED OCTOBER 18, 1988 —
REHEARING DENIED NOVEMBER 7, 1988 —

James C. Wyatt, for appellant.
Stephen F. Lanier, District Attorney, Fred R. Simpson, Assistant District Attorney, for appellee.