(839 P.2d 58)

No. 67,354

No. 67,355

STATE OF KANSAS, *Appellee,* v. CHARLES J. SCHLEIN and ROBERT W. BURGOON, *Appellants.*

Opinion filed September 18, 1992.

*David R. Gilman,* of Overland Park, for appellants.

*Michael Warner,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before RULON, P.J., BRAZIL, J., and E. NEWTON VICKERS, District Judge Retired, assigned.

VICKERS, J.: This appeal involves two consolidated cases, K-66804 and K-66805. Both defendants-appellants, Charles J. Schlein and Robert W. Burgoon, appeal their convictions of one count each of gambling in violation of K.S.A. 21-4303(b). Schlein contends the trial court erred in denying his motion for judgment of acquittal because the State failed to prove he had entered a gambling place and contends the trial court erred in refusing his proposed jury instruction defining a gambling place. Burgoon

likewise contends the State failed to prove he had entered a gambling place.

The facts herein are as follows:

James Carmack, special agent with the Kansas Bureau of Investigation (KBI), discovered a flier at the Woodlands racetrack advertising a marathon poker tournament. The flier included a map showing the location of the tournament.

On March 8, 1991, KBI agents and Overland Park police officers investigated the alleged marathon poker tournament being held at a residential address in Johnson County, Kansas. When police detective John Jackson, wired with a transmitter and working undercover, arrived at the residence, he asked the suspected tournament organizer if he might participate in the tournament.

Jackson paid the man an entry fee, then he was escorted next door to the adjoining half of a two-story duplex. The suspected organizer (lessee) had leased both premises, but only occupied one residence with his family. Jackson walked through the lower level, going from room to room, and observed only a table and chairs in the dining room, and a sofa and television in the living room.

Approximately eight men were already in the home when Jackson arrived. Jackson watched other individuals arrive who also paid the entry fee. Eventually, 22 people had assembled to play poker, including Jackson.

While waiting for the tournament to begin, Jackson read information supplied by the lessee that explained entry fees, a breakdown of how the money would be paid to the winners, what poker games were going to be played, how much betting would be allowed in each round, the times the players would be playing, break times, and rules of the tournament.

The lessee gathered the players together, made sure everyone understood the rules, and assigned each player a number that corresponded to a chair on the second floor in which the player would be seated. The players then went upstairs.

Green-topped card tables had been placed in each of the three upstairs rooms. At each card table were chairs with numbers on them. Around the green top portion of each card table was an area for the players' drinks and poker chips. Red, white, and

blue poker chips and playing cards were on each table. No other furnishings were in the rooms.

Jackson located his assigned chair in one of the rooms, then began playing various poker games with other players using the poker chips to bet. Jackson left his chair twice, looked into the other two rooms, and saw other individuals, including Schlein, playing poker. At approximately midnight, Jackson signaled the other police officers and KBI agents to enter the home. The officers and agents entered the home and arrested the tournament players. Each player was interviewed and photographed, then some were allowed to leave. The KBI agents seized several gambling-related items including four card tables, a number of stacking chairs, numerous boxes of poker chips, playing cards, $1,777 in cash, a tournament survey sheet, tournament rules and information sheets, and a trophy etched with prior winners' names dating back to 1987 and "St. Patrick's Day Marathon Poker Championship."

Complaints were filed against Schlein and Burgoon alleging each had engaged in gambling in violation of K.S.A. 21-4303(b) and the case against Schlein proceeded to jury trial. Jackson testified that at one time he patrolled the area of Overland Park in which the residence is located, but he had never heard of gambling taking place on the premises before the night the tournament began. Jackson stated that to his knowledge the property had never been used previously for gambling purposes. Carmack testified he did not know whether the residence had ever been used for gambling prior to the poker tournament, and to his knowledge the premises were used for gambling only on this one occasion.

At the close of the State's case in chief, Schlein moved the trial court for an order of judgment of acquittal. In sum, Schlein contended the State had not proven he had entered and remained in a gambling place for the purpose of making a bet. Schlein argued the State had not shown the principal use of the residence was for gambling. The trial court denied Schlein's motion.

During the jury instruction conference, Schlein objected to the trial court's instruction on the elements of the crime of gambling and requested his proposed instruction be given. The trial court overruled Schlein's objection.

After deliberations, the jury found Schlein guilty as charged.

In the meantime, Burgoon entered into a stipulation with the State concerning the gambling charge to be offered to the trial court for a determination of Burgoon's guilt or innocence. Based upon the stipulation, the trial court found Burgoon guilty as charged.

Schlein and Burgoon each were sentenced to serve 30 days in the Johnson County Adult Detention Center and fined $150. Both timely appealed.

The first issue to be addressed herein is whether the trial court erred in denying Schlein's motion for judgment of acquittal because the State did not prove he had entered a gambling place.

Schlein contends the State failed to prove the residence was a gambling place. Schlein argues no evidence was presented that the residence had a reputation as a gambling place or that it was frequently visited by persons known to be commercial gamblers. Schlein asserts K.S.A. 21-4303(b) contemplates something more than one evening of poker at a residence before the statute is violated.

The State contends K.S.A. 21-4302(5), which defines a gambling place, is quite broad in scope and is not delimited by requirements of time. The State asserts any place at any time may qualify as a gambling place if it is being used for the purposes described in K.S.A. 21-4302(5). The State argues the residence was vacant and being used solely for the purpose of housing an elaborately organized marathon poker tournament, which the State contends is more than sufficient evidence to show the residence was a gambling place.

"In ruling on a motion for judgment of acquittal, if a trial judge concludes from the evidence that a reasonable mind might fairly decide a defendant is guilty beyond a reasonable doubt, the motion must be denied and the case must go to the jury. [Citation omitted.] On appeal, the reviewing court must decide whether a rational factfinder could have found the accused guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Crichton,* 13 Kan. App. 2d 213, 218-19, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989).

The question presented by Schlein involves interpretation of K.S.A. 21-4302(5) to determine what evidence is required to prove an establishment is a gambling place, an issue which has

not yet been addressed by our appellate courts. "Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature." *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 1, 829 P.2d 561 (1992). "Penal statutes must be strictly construed in favor of the persons sought to be subject to them." *State v. Thompson,* 237 Kan. 562, 566, 701 P.2d 694 (1985).

Pursuant to K.S.A. 21-4303(b) gambling is defined as: "Entering or remaining in a gambling place with intent to make a bet, to participate in a lottery, or to play a gambling device."

The definition of a gambling place is found in K.S.A. 21-4302(5):

"A 'gambling place' is any place, room, building, vehicle, tent or location which is used for any of the following: Making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place."

The Judicial Council notes following K.S.A. 21-4303 provide:

"Under subsection (b) it must be proved that (1) the offender entered or remained in a gambling place, *i.e.,* a structure, *one of whose principal uses* is for making and settling bets, receiving, holding, recording or forwarding bets or offers to bet, conduct lotteries, or playing gambling devices [21-4302(5)] and (2) that the offender had an intent to make a bargain which is a bet under 21-4302(1) or to participate in an enterprise which is a lottery under 21-4302(2) or to play a contrivance which is a gambling device under 21-4302(4)." (Emphasis supplied.)

Although the notes and comments of the Kansas Judicial Council do not have the force and effect of law and are advisory only, they may be one indication of legislative intent. *State v. Noah,* 246 Kan. 291, Syl. ¶ 3, 788 P.2d 257 (1990). It should be noted the Judicial Council notes following K.S.A. 21-4305 and K.S.A. 21-4308 also refer to a gambling place as a place or structure, one of whose principal uses is for making and settling bets.

The Judicial Council notes following K.S.A. 21-4302 state the statutes of Wisconsin, New Mexico, and Colorado were consulted in preparing that section, K.S.A. 21-4303, and certain other Kansas criminal statutes relevant to gambling.

The definition of gambling place found in K.S.A. 21-4302(5) is similar to the definition of gambling place set forth in Wis. Stat. § 945.01(4)(a) and (b) (1991), which states:

"(a) A gambling place is any building or tent, any vehicle (whether self-propelled or not) or any room within any of them, one of whose principal uses is any of the following: making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling machines.

. . . .

"(b) Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be professional gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place."

In *State v. Nixa*, 121 Wis. 2d 160, 360 N.W.2d 52 (1984), *rev. denied*, the Wisconsin Court of Appeals was required to interpret the definition of "gambling place" in Wis. Stat. § 945.01(4) and determine whether the evidence sustained the defendant's conviction on a charge of illegally remaining in a gambling place. Nixa had been arrested after allegedly participating in a gambling party in the recreational building of an apartment complex. 121 Wis. 2d at 162. The arrest followed an investigation by the sheriff's department and city police conducted after the sheriff's department received an anonymous telephone call about the gambling party. Upon arriving at the apartment complex, the police discovered a room fully equipped with gambling tables and related paraphernalia and crowded with people eating, drinking, and gambling. 121 Wis. 2d at 162.

Nixa unsuccessfully moved to dismiss the charge, contending the one-time use of the apartment recreational building for gambling did not constitute a gambling place under Wis. Stat. § 945.01(4). 121 Wis. 2d at 162. The Wisconsin Court of Appeals agreed with Nixa, concluded evidence of prior gambling activity was necessary to prove the existence of a gambling place, and reversed his conviction. 121 Wis. 2d at 164.

The court stated:

"Various terms in the statute suggest that prior gambling activity is essential for a location to be considered a gambling place. The definition in subsection (a) provides that a location may be considered a gambling place if one of its principal uses is gambling. Subsection (b) provides that evidence showing a place has a reputation for gambling or is frequently visited by

gamblers or people known as frequenters of gambling places is admissible on this question. The term 'one of whose principal uses' implies a pattern of similar use on a prior occasion or occasions." 121 Wis. 2d at 164.

The court, quoting *State v. Morrissy*, 25 Wis. 2d 638, 642-43, 131 N.W.2d 366 (1964), continued:

" 'The use of a place or room at any given time may determine its principal use at that time but for the purpose of sec. 945.01(4), Stats., such use must be considered in light of the overall or other uses of the place or room.' " 121 Wis. 2d at 165.

The court concluded no evidence was presented at Nixa's trial to show prior gambling activity at the apartment complex and nothing in the facts of the charged event suggested prior gambling activity on the premises. The court held the evidence was insufficient, as a matter of law, to satisfy the element of the offense requiring proof of a gambling place. 121 Wis. 2d at 166-67.

Although the language of K.S.A. 21-4302(5) defining a gambling place does not include the phrase "one of whose principal uses," the Judicial Council notes following K.S.A. 21-4303 clearly show the legislature intended that under K.S.A. 21-4303(b) the State must prove the defendant entered or remained in a gambling place, *i.e.*, a structure, *"one of whose principal uses* is for making and settling bets." (Emphasis supplied.)

Several of our sister states likewise agree that more than one occasion of gambling must be shown to prove the premises is a gambling place. See, *e.g., State v. Cieri*, 128 Conn. 149, 151-52, 20 A.2d 733 (1941) ("[T]he use of a place to render it a gambling house must be frequent, customary, common or habitual . . . and a single act of gaming is insufficient to constitute it a gaming house."); *Glisson v. State*, 208 So. 2d 274 (Fla. Dist. App. 1968) (evidence must show gambling had been habitually carried on in house in question); *Whatley v. State*, 189 Ga. App. 173, 174, 375 S.E.2d 245 (1988), *cert. denied* 189 Ga. App. 913 (1989) (evidence is required that gambling activity had been occurring on premises on an ongoing basis); *People v. Calkins*, 13 Misc. 2d 791, 793, 178 N.Y.S.2d 385 (1958) (a gambling establishment is not one set up to exist for a moment, but is a regular place for the transaction of gambling as a business); *Schepps v. City of El Paso*, 338 S.W.2d 955, 959 (Tex. Civ. App. 1960), *reh. denied* October 5, 1960 (one occasion of gambling in a house

will not be sufficient evidence to find the premises is a gambling house).

The court in *Calkins* stated: "[A]ssisting in the operation of a gambling establishment . . . is to be distinguished from the occasional placing of a bet or the wagering which occurs between friends, as an incident or form of recreation." 13 Misc. 2d at 793.

The minority view is that one instance of gambling will be enough to render a premises a gambling place. See *People v. Smith,* 50 Ill. App. 2d 361, 365, 200 N.E.2d 748 (1964) (based upon court's interpretation of Illinois statute).

In the present situation, both Jackson and Carmack testified they had no knowledge of whether the residence previously had been used for gambling purposes. According to each, the premises was used for gambling only one time—the evening the poker tournament began. The testimony is clear that the premises, at no previous time, had the reputation of a gambling place, or had been used as such. The State failed to establish that the residence was a gambling place within the meaning of K.S.A. 21-4302(5).

The question of the application of a statute to a given set of facts is a question of law. *Brookover Feed Yards, Inc. v. Carlton, Commissioner,* 213 Kan. 684, 687, 518 P.2d 470 (1974). The trial court erred by denying Schlein's motion for judgment of acquittal. The evidence does not prove the offense, and Schlein's and Burgoon's convictions for a violation of K.S.A. 21-4303(b) are reversed.

The second issue raised in this appeal is whether the trial court erred in refusing to instruct the jury pursuant to Schlein's proposed instruction defining a gambling place.

Schlein requested that the following instruction be given:

"You are instructed that for the defendant to be found guilty of the crime charged the State must prove that:

"1) The defendant entered or remained in a gambling place, i.e., a structure, one of whose principal uses is for making and settling bets;

"2) That he did so with intent to make a bet; and

"3) That this act occurred on or about the 8th day of March, 1991, in Johnson County, Kansas."

Over Schlein's objection, the trial judge instructed the jury pursuant to PIK Crim. 2d 65.06:

"The defendant is charged with the crime of gambling. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"1. That the defendant entered or remained in a gambling place with intent to make a bet; and

"2. That this act occurred on or about the 8th day of March, 1991, in Johnson County, Kansas."

Schlein contends his proposed instruction properly defined gambling place, in accordance with legislative intent, to include the phrase from the Judicial Council notes "one of whose principal uses."

"Jury instructions are to be considered together and read as a whole, without isolating any one instruction. [Citations omitted.] If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous. [Citation omitted.]" *State v. Morris*, 244 Kan. 22, 23, 765 P.2d 1120 (1988).

The trial court defined "gambling place" in its instructions to the jury pursuant to PIK Crim. 2d 65.07, which replicates K.S.A. 21-4302(5). As previously discussed, K.S.A. 21-4302(5) does not include the phrase "one of whose principal uses." The legislature, however, in the Judicial Council notes following K.S.A. 21-4303, specifically states a gambling place is a structure *"one of whose principal uses* is for making and settling bets." (Emphasis supplied.) It is clear the legislature intended the principal uses of the structure to be taken into consideration when determining whether a premises is a gambling place.

Our Supreme Court in *State v. Simon*, 231 Kan. 572, 646 P.2d 1119 (1982), disapproved of PIK Crim. 2d 54.17, a self-defense instruction based upon K.S.A. 21-3211, because the instruction did not include the necessary definition of "reasonable belief" set forth in the Judicial Council comments following K.S.A. 21-3211; those comments explained that an objective standard is to be applied when determining the reasonableness of an accused's actions. The court concluded a proper instruction would combine the language of K.S.A. 21-3211 with the definition of reasonable belief found in the Judicial Council comments. 231 Kan. at 575.

In this case, the trial court's instructions, even though based on PIK Crim. 2d, did not reflect our legislature's intent, misstated

the law, and misled the jury. When defining a gambling place, a proper instruction should combine the phrase "one of whose principal uses" set forth in the Judicial Council notes with the definition found in K.S.A. 21-4302(5).

Reversed and remanded with instructions to discharge defendants.

RULON, J., dissenting: I disagree with the majority opinion because the statutory language found in K.S.A. 21-4303(b) and K.S.A. 21-4302(5) is clear and unambiguous. There is no statutory requirement that more than one instance of gambling occur before a premises is rendered a gambling place. Judicial Council notes are *not* the equivalent of statutory law.

Additionally, I disagree with the majority that the district court erred when instructing the jury. The district court's instructions were properly based upon statutory language and *not* Judicial Council notes.

I would affirm.