S95A2013. LARRY v. THE STATE.
(466 SE2d 850)

HINES, Justice.

Marquett Larry was convicted of felony murder while in the commission of armed robbery and aggravated assault, kidnapping, and possession of a firearm during the commission of certain crimes in connection with the shooting death of Ronald Paul Ray. Larry was also convicted of the kidnapping and armed robbery of Soloman Walker and of possession of a firearm during the commission of those crimes.[1]

The evidence at trial, considered in the light most favorable to the verdict, showed that Larry and co-defendant Overstreet were

---

[1] The crimes occurred on May 19, 1994. Larry and Thomas Edward Overstreet were indicted on July 19, 1994, for the kidnapping and felony murder of Ronald Paul Ray while in the commission of armed robbery and aggravated assault against Ray, and for possession of a firearm during the commission of such crimes. On that date, they were additionally indicted for the armed robbery and kidnapping of Soloman Walker and for possession of a firearm during the commission of those crimes. Larry and Overstreet were tried jointly on February 27-March 2, 1995. Larry was found guilty of all charges. Overstreet was found guilty of the armed robbery of Walker and acquitted of the remaining charges. On March 28, 1995, Larry was sentenced to twenty years incarceration on each kidnapping count, life imprisonment for the felony murder and for the armed robbery, and five years of incarceration on each firearms charge, the five-year terms to be served consecutively to each other. A motion for new trial was filed on March 30, 1995, and denied on May 23, 1995. The notice of appeal was filed on August 25, 1995, and the appeal was docketed in this Court on September 18, 1995. The case was submitted for decision without oral argument on November 13, 1995.

armed with handguns when they entered Ray's tire business. Overstreet drew a semiautomatic weapon on Ray and forced him to his knees. Larry pointed a .9 millimeter handgun at Walker, ordered him to the back of the store, and made him kneel and give whatever cash he had. Larry searched Walker's pockets and directed him to lie face down on the floor. Larry returned to where Ray was kneeling. Ray had a handgun and Larry and Ray exchanged gunfire. Larry was wounded and was hospitalized. Ray sustained multiple gunshot wounds and bled to death from a bullet which transected his aorta.

1. Larry contends that the trial court erred in denying his motion for new trial based upon the general grounds because his convictions for the armed robbery and kidnapping of Ray cannot be sustained. He urges that there was no evidence that he pulled a gun on Ray in order to rob him or that he forced Ray to move, and that he could not be convicted as a party to Overstreet's acts against Ray because the jury found Overstreet guilty only of the armed robbery of Walker. Overstreet's acquittal on the charges does not provide Larry with a basis for attacking his convictions. *Lucas v. State*, 264 Ga. 840 (2) (452 SE2d 110) (1995); *Parker v. Mooneyham*, 256 Ga. 334, 335 (349 SE2d 182) (1986); *Milam v. State*, 255 Ga. 560 (341 SE2d 216) (1986). The evidence was sufficient to authorize a rational trier of fact to find Larry guilty beyond a reasonable doubt of all of the crimes with which he was charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Larry challenges the admission into evidence of two tape-recorded statements he made to police while he was in the hospital recovering from his gunshot wounds. Following a *Jackson-Denno*[2] hearing, the trial court found by a preponderance of the evidence that the statements were freely and voluntarily given and that Larry was advised of his constitutional rights.

(a) Larry contends that the first statement made the day after the shooting was not voluntary because it was the result of police interrogation after he had invoked his right to remain silent.

The evidence at the *Jackson-Denno* hearing along with the transcript of the interview reveals the following: Larry did not execute a written waiver of counsel because the intravenous and other medical treatment he was receiving made it physically difficult for him to sign. An investigator turned on the tape recorder and read Larry each of the *Miranda* rights.[3] Larry responded that he understood each right, but when asked whether he wished to talk, he replied "no." The investigator turned off the tape recorder and the interview ended. The

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).
[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

police prepared to leave the room and informed Larry of the impending charges. The interview resumed approximately two minutes later after Larry began to talk about the incident and stated to the investigators that he had no objection to speaking briefly with them because he wanted to tell "his side of what happened." The investigator asked Larry if it was correct that he wanted to speak with them. Larry responded, "[a] little bit, yeah" although "I really don't feel like talking because I'm hurting . . . in my stomach and stuff." Larry spent the next 28 minutes recounting alleged circumstances of the shooting.

The evidence supports the trial court's findings in favor of admissibility. See *Short v. State*, 256 Ga. 165, 167 (3) (345 SE2d 340) (1986) regarding the deference on review to be given to the trial court's conclusions. "[T]he right to silence is not protected by a per se rule of 'permanent immunity' against further police-initiated interrogation." *Hatcher v. State*, 259 Ga. 274, 277 (2) (379 SE2d 775) (1989), quoting *Michigan v. Mosley*, 423 U. S. 96, 103 (96 SC 321, 46 LE2d 313) (1975). Here, Larry initiated further dialogue with the investigators after the break in the interview, clearly evincing his intent not to remain silent. *Hatcher* at 277 (2). Although Larry later complained about his physical discomfort in speaking, this was not an equivocation of his decision to put on record his version of events. Regardless, any error in admitting the statement would have to be deemed harmless because the statement was echoed by Larry's testimony at trial. *Callaway v. State*, 257 Ga. 12, 14 (2) (354 SE2d 118) (1987).

(b) Larry maintains that the second statement, made four days after the shooting, was inadmissible because the fact that he was recovering from painful gunshot wounds rendered the statement involuntary as a matter of law. The fact that a defendant is in pain or taking pain medication does not, in and of itself, render any statement made involuntary. See *Fulmer v. State*, 205 Ga. App. 679, 680 (2) (423 SE2d 300) (1992); *Evans v. State*, 176 Ga. App. 818, 819 (1) (338 SE2d 48) (1985). Nor does the circumstance of a defendant being hospitalized and undergoing treatment require such a finding. "The question of whether a waiver of rights and a subsequent statement have been voluntary and knowing depends on the totality of the circumstances. [Cit.]" *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993). Larry signed a written waiver. He was read each of the *Miranda* rights and responded that he understood and that he would talk with the investigators. At no time did he indicate that he wished to remain silent or to speak with an attorney or have counsel present. He appeared healthier and well on the road to recovery. The evidence supports the finding that the 13-minute statement was voluntary.

3. Larry contends that the trial court's charge to the jury that it "may take into consideration the fact that he is interested in the re-

sult of the prosecution" improperly singled out his testimony and applied a different standard to the prosecution and defense in violation of due process and equal protection under the Federal Constitution. Such an instruction, which was approved in *Johns v. State*, 239 Ga. 681, 684 (4) (238 SE2d 372) (1977), "merely stated the self-evident fact of [Larry's] interest in the outcome of the case." *Woods v. State*, 265 Ga. 685, 687-688 (461 SE2d 535) (1995); see also *Phelps v. State*, 245 Ga. 338, 341 (6) (265 SE2d 53) (1980). Moreover, the court made it plain that the defendant's testimony was not to be given different treatment. The court also charged, "when the accused testifies he at once becomes the same as any other witness and his credibility is to be tested by and subjected to the same tests that are legally applied to any other witness."

4. The contention that the trial court committed reversible error in allowing the jury to change its foreperson after the start of deliberations is unavailing. Larry failed to state any ground for his objection below. Nor does he articulate any harm from the substitution, which harm he must demonstrate in order to secure reversal. *Griffin v. State*, 265 Ga. 552, 554 (6) (458 SE2d 813) (1995).

5. During the poll conducted after the jury initially announced it had reached a verdict, the twelfth juror affirmed that it was her verdict in the jury room and that it was freely and voluntarily made, but responded negatively when asked the final question of whether or not it was still her verdict. Rather than granting a mistrial, the trial court properly returned the jury to continue its deliberations. *Hunter v. State*, 202 Ga. App. 195, 198 (5) (413 SE2d 526) (1991), citing *Walker v. State*, 159 Ga. App. 50 (1) (282 SE2d 697) (1981).

Approximately 13 minutes later, the court received word that the juror in question and another juror wished to be excused from further consideration of the case. The juror in question felt that fellow jurors were trying to make the decision for her; the other juror expressed concern about determining another's fate. The court gave the jury an *Allen*[4]-type charge and sent it back to deliberate. Even though Larry's counsel moved for a mistrial, he did so after expressly stating there was no objection to the charge as given. About an hour later, the jury indicated it could not reach a decision. The court responded to questions posed by the jury and allowed it further deliberation. A short time later, the jury returned with a unanimous verdict and the subsequent poll of the jurors confirmed that the verdict was freely and voluntarily made by each of them. The earlier voiced reservations of the two jurors did not prevent the final verdict from being free and voluntary and unanimous. *Rouse v. State*, 265 Ga. 32, 34 (3) (453

---

[4] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

SE2d 30) (1995). Nor did the court's *Allen* instruction taint the verdict. It was not coercive, which is the issue in reviewing such a charge. *Sanders v. State*, 257 Ga. 239, 243 (7) (357 SE2d 66) (1987).

Larry's motion for mistrial after the initial jury poll and his subsequent motions for mistrial based on the jury's alleged deadlock were properly denied.

*Judgments affirmed. All the Justices concur.*

DECIDED FEBRUARY 19, 1996.

*Stanley C. House,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General,* for appellee.